433 F.2d 124
 William C. SHIFLETT, Appellant,
v.
COMMONWEALTH OF VIRGINIA, and C. C. Peyton, Superintendent of the Virginia State Penitentiary, Appellees.
James Curtis WEATHERMAN, Appellant,
v.
C. C. PEYTON, Superintendent, Virginia State Penitentiary, Appellee.
Orillion D. JAMES, Appellant,
v.
C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.
John Henry LOVE, Appellant,
v.
COMMONWEALTH OF VIRGINIA, Appellee.
 No. 12355.
 No. 12761.
 No. 13522.
 No. 13392.
 United States Court of Appeals, Fourth Circuit.
 Argued June 4, 1970.
 Decided October 19, 1970.
 
 No. 12,355. Frank C. Maloney, III, Richmond, Va. (Court-assigned), (Joseph L. Lewis, and Hirschler & Fleischer, Richmond, Va., on the brief), for appellant. Reno S. Harp, III, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on the brief) for appellees. No. 12,761. Robert A. Pustilnik, Richmond, Va. (Court-assigned), for appellant. Vann H. Lefcoe, Asst. Atty. Gen. of Va., (Andrew P. Miller, Atty. Gen. of Va., on the brief) for appellee.
 No. 13,522. Louis M. Natali, Jr., Philadelphia, Pa. (Court-assigned), for appellant. Vann H. Lefcoe, Asst. Atty. Gen. of Va., (Andrew P. Miller, Atty. Gen. of Va., on the brief) for appellee. No. 13,392. Benjamin Lerner, Philadelphia, Pa. (Court-assigned), for appellant. W. Luke Witt, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on the brief), for appellee.
 Before BOREMAN and WINTER, Circuit Judges, and LEWIS, District Judge.
 WINTER, Circuit Judge:
 
 
 1
 In Nelson v. Peyton, 415 F.2d 1154 (4 Cir. 1969), we held that an accused's right to counsel was violated when, after conviction, his attorney failed to advise him of his right to appeal and the manner and time in which to appeal. We said "[w]here counsel * * * treat their representation as terminated without having imparted such advice, a defendant's right to counsel has been effectively denied; or, where counsel have not treated their representation as terminated but fail to impart such advice, a defendant's right to effective assistance of counsel has been effectively denied. In either event, if the omissions of counsel have not been supplied by advice imparted by the trial court * * a defendant's Sixth Amendment right, as made applicable to the states by the Fourteenth Amendment, has been violated." 415 F.2d at 1158. We reserved the question of retroactive application of the rules thus stated.
 
 
 2
 In these four appeals, the question of the retroactivity of Nelson is claimed to be presented. In three (Nos. 12,355, 13,392 and 13,522), we agree that the question must be decided, and we hold that Nelson is retroactive in application. In No. 12,761, we think that the decision may rest on the more settled rule that trial counsel was ineffective by failing to perfect the appeal that the defendant requested.
 
 
 3
 * The facts necessary to state for decision are as follows:
 
 
 4
 James Curtis Weatherman. In 1961, Weatherman was tried by a jury in Virginia on a charge of robbery, convicted and sentenced to fifty years' imprisonment. Thereafter, he discussed the trial with his retained attorney, a member of the North Carolina bar. According to Weatherman and his mother, the attorney told him that the attorney would take steps to get him a new trial. The attorney admitted that he discussed the question of a new trial with Weatherman, and while "I didn't say I'd try to appeal as such," he told Weatherman "I'd try to help him in any way I can." The attorney also said that he had a discussion with Mrs. Weatherman, that he told her he believed there was possible error in the trial and that while he was not familiar with getting an appeal, he would help in any way that he could. The attorney thought that he may have told Mrs. Weatherman about the sixty-day time limit for taking an appeal, but he knew that he had not given this information to Weatherman. The attorney was specific that Weatherman and his mother got the impression that "I would appeal," but he added — and this may be the explanation for his subsequent inaction — "I didn't feel that I had a legal duty to do it, I don't think I was `employed' for the purpose of appeal."
 
 
 5
 No appeal was taken within sixty days.
 
 
 6
 Weatherman admitted that he did not request an appeal. He knew that appeals were taken to the Supreme Court of Appeals of Virginia, but he knew nothing about appellate procedure, including the time limit within which an appeal must be taken.
 
 
 7
 The district judge denied a writ of habeas corpus, without plenary hearing, on the basis of the state habeas corpus record. Without deciding whether the attorney was or was not to perfect an appeal, the district judge ruled that there could be no denial of the right to appeal without state action, and since there was no evidence that the state or the trial court was ever aware that Weatherman desired an appeal, Weatherman was not entitled to relief.
 
 
 8
 John Henry Love. In 1965, Love was convicted by a jury of second degree murder and sentenced to a term of eighteen years. He was represented at trial by a court-appointed attorney. Neither Love nor his attorney took an appeal.
 
 
 9
 Following his conviction, Love talked to his attorney several times concerning his forthcoming trial on another charge for which the same attorney also represented him. The subject of the murder trial, then completed, was discussed on two occasions. Love did not express any desire to appeal, but he did ask how he could be released on parole. At the state habeas corpus hearing, the attorney testified that he told Love that he had no grounds for appeal, but he freely admitted that he did not explain to Love that he had a right to appeal, irrespective of his counsel's view of the merits, and that, if indigent, counsel would be supplied him. In his own words, the attorney said "I didn't go into it any further than that since I felt that the Court had made no error."
 
 
 10
 At his state habeas corpus hearing, Love testified that he wanted to appeal after he was taken to jail following imposition of sentence, but he did not know that he could appeal, and "[e]veryone in jail said you had to have so much money before you could appeal * * *." Love did not discuss this with his counsel; nor did he communicate with the judge or any other attorney.
 
 
 11
 The district judge, relying on the transcript of the state habeas corpus hearing, summarily denied relief, apparently on the ground that Love failed to articulate a desire to appeal to his attorney or to the court: "By petitioner's own testimony it was only after he arrived at the penitentiary that he decided to appeal, but that he never made this desire known to his counsel or to the court. This, in addition to the testimony of court-appointed counsel to the effect that the petitioner was satisfied with the verdict, and showed no indication that he wanted to appeal leads this court to the conclusion that there was no denial of any constitutional rights concerning an appeal. * * * in order to be granted relief upon a habeas corpus petition, the petitioner must prove by a preponderance of the evidence that he is entitled to such relief. * * * the petitioner has clearly failed to carry this burden * * *."
 
 
 12
 William C. Shiflett. In 1963, Shiflett was convicted of second degree murder and sentenced to twenty years' imprisonment. His trial was before a jury, and he was represented by counsel employed by his parents. After the trial Shiflett was told by his attorneys that he could appeal if he wanted to, "but that it would cost a large sum of money." Shiflett told his counsel "I didn't know, I didn't have any money."
 
 
 13
 At the time of this exchange, Shiflett's lawyers knew that he was indigent and that his parents had exhausted their resources to pay trial fees. Counsel were of the view that error had been committed during the trial in that the only evidence that Shiflett was at fault in the homicide — testimony of the sheriff as to statements made by Shiflett's wife — was improperly admitted, and that there was, therefore, a basis for overturning the conviction on appeal. They did not advise Shiflett that he had a right to appeal in forma pauperis, a right to a court-appointed attorney and a right to a transcript at state expense. Shiflett was unaware of these rights and did not learn of them until a year after he began service of his sentence at the state penitentiary.
 
 
 14
 The district judge granted a plenary hearing and also relied on the transcript of state post conviction proceedings. He concluded that because "petitioner gave no indication to his trial counsel that appellate review was desired * * * petitioner has not been denied his right of appeal * * *."
 
 
 15
 Orillion D. James. James was convicted of murder in 1958 and sentenced to life imprisonment. He had pleaded not guilty and was tried by a jury. At trial he was represented by a lawyer retained by his mother for a fee of $100. No transcript of the trial was made because neither James nor his mother could provide the money to pay a stenographer.
 
 
 16
 After sentence was pronounced, the lawyer terminated his services. He did not tell James that he had a right to appeal, that he had a right to court-appointed counsel on appeal or that he had a right to a transcript at state expense to perfect his appeal. At one of the two state habeas corpus hearings, the lawyer advanced as one reason for his inaction his belief that James' mother could not bear the costs of an appeal. James was unaware of these rights until 1965, when he learned of them from another prisoner.
 
 
 17
 No appeal was ever taken. Based upon the state habeas record, the district judge denied relief because James had never requested an appeal. The district judge added that "[w]hile under today's procedure, counsel may have the duty to advise a defendant of his right to appeal, nothing in the state or federal rules or decisions required it in 1958."
 
 
 18
 In none of the four cases summarized above is there any claim of failure to exhaust available state remedies. Accordingly, the various descriptions of the exhaustion processes have been omitted.
 
 II
 
 19
 In No. 12,761, James Curtis Weatherman, the record makes clear that after sentencing Weatherman desired posttrial relief. As one untrained in the law, he relied on his attorney. The attorney understood that Weatherman and his mother thought that the attorney would appeal. Yet he did nothing to perfect an appeal, nor, being unfamiliar with Virginia appellate practice, did he advise his client to seek other counsel or even that, being unfamiliar with Virginia practice, he was unable to act. The constitutional right to the assistance of counsel for purposes of appeal was abridged. Caton v. Alabama, 392 U.S. 645, 88 S.Ct. 2298, 20 L.Ed.2d 1354 (1968); Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Allred v. Peyton, 385 F.2d 360 (4 Cir. 1967); Magee v. Peyton, 343 F.2d 433 (4 Cir. 1965); Boles v. Kershner, 320 F.2d 284 (4 Cir. 1963). We disagree with the district judge that the right to effective counsel is denied in only those instances in which counsel defaults after the defendant's desire to appeal is communicated to the state court or some other state representative. United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2 Cir. 1967). See also Snead v. Smyth, 273 F.2d 838 (4 Cir. 1959). The notion that state participation, state action or state default is an essential element of a case for relief in this situation confuses a case in which denial of a right of appeal constitutes a denial of equal protection or a violation of due process with one, like the instant case, in which the right denied is the right to effective assistance of counsel guaranteed by the Sixth Amendment. In the latter case no element of state involvement need be proved to warrant relief.
 
 III
 
 20
 In each of the remaining cases, there was either a failure to advise the defendant that he had a right of appeal or a failure to advise the defendant fully of the constituent elements of the right of appeal. In each there was, under the rule of Nelson, either a denial of counsel or a denial of the right to effective counsel.
 
 
 21
 In reserving the question of the retroactive effect of the rule stated in Nelson, we remarked that "the rules in right to counsel cases are generally applied retroactively. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (per curiam)." 415 F.2d at 1158. Full consideration of the retroactivity of Nelson leads us to conclude that it, too, must be applied retroactively.
 
 
 22
 McConnell v. Rhay, to which we referred in Nelson, is controlling authority for this result. In it, the retroactive application of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), which held that counsel must be provided at a hearing concerning the revocation of probation, was considered. The Mempa rule was held retroactive in the following statement:
 
 
 23
 This Court's decisions on a criminal defendant's right to counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, [93 A.L.R. 2d 733] (1963); at certain arraignments, Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); and on appeal, Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), have been applied retroactively. The right to counsel at sentencing is no different. As in these other cases, the right being asserted relates to "the very integrity of the fact-finding process." Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601, 614 (1965); cf. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). As we said in Mempa, "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." 389 U.S., at 135, 88 S.Ct., at 257, [19 L.Ed.2d at 341]. The right to counsel at sentencing must, therefore, be treated like the right to counsel at other stages of adjudication. 393 U.S. at 3-4, 89 S.Ct. at 33-34.
 
 
 24
 As the quotation discloses, the rationale of holding retroactive the decisions in right to counsel cases is that the presence and effective participation of counsel is essential to the integrity of the fact-finding process. Recently, we found this factor to be of paramount importance in holding that the right to counsel of a juvenile at a waiver hearing must be applied retroactively. Kemplen v. Maryland, 428 F.2d 169 (4 Cir., decided May 22, 1970). There we noted that "[t]here is a very real danger in any waiver proceeding that, without the presence of counsel for the accused, juvenile jurisdiction will be waived on the basis of unreliable or untrue information." (emphasis supplied.) 428 F.2d at 176.
 
 
 25
 The period between sentencing and effective presentation of an appeal is a part of the appeal process. Indeed, it is a very necessary part of the appeal, because that is the time that a decision whether to appeal is made. If the decision be in the affirmative, it is at this time that the various steps necessary to perfect an appeal are taken. As we said in Nelson, "[w]here appellate review is provided it becomes an `integral part of the * * * trial system for finally adjudicating the guilt or innocence of a defendant,' and denial of the right has been analogized to denying a fair trial. Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956)." 415 F.2d at 1159. Understandably, those cases which have failed to hold retroactive various new holdings applicable to the administration of criminal law have carefully delineated the appeal process from their respective decisions.
 
 
 26
 Thus, in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), which held that Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), deciding that the guarantee against self-incrimination forbade either comment by the prosecution on an accused's silence or instructions by the court that such silence is evidence of guilt, was not retroactive, the Court carefully noted:
 
 
 27
 As in Mapp, therefore, we deal here with a doctrine which rests on considerations of quite a different order from those underlying other recent constitutional decisions which have been applied retroactively. The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent. (emphasis supplied.) 382 U.S. at 416, 86 S.Ct. at 465.
 
 
 28
 Similarly, in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which considered the retroactivity of the holding that there is a right to counsel at police lineups and held it not retroactive, the statement was made:
 
 
 29
 It is true that the right to the assistance of counsel has been applied retroactively at stages of the prosecution where denial of the right must almost invariably deny a fair trial, for example, at the trial itself * * * or at some forms of arraignment * * * or on appeal. (emphasis supplied.) 388 U.S. at 297, 87 S.Ct. at 1970.
 
 IV
 
 30
 There remains only the question of relief to be granted in each case. The effect of the denial of the right to counsel and the effective assistance of counsel was a denial of the right of appellate review. The granting of writs of habeas corpus should be withheld for a reasonable period in which to permit the Commonwealth to grant belated appellate review. If, however, belated appellate review is not granted, or cannot be granted because of the impossibility of obtaining a transcript of the original trial or an adequate substitute, then the writs should issue. However, their effect should be stayed a reasonable period to permit the Commonwealth an opportunity to retry the petitioners if it be so advised.
 
 
 31
 Reversed and remanded.
 
 
 32
 LEWIS, District Judge (dissenting).
 
 
 33
 The majority here goes further than I am willing to go in giving these state-convicted defendants a belated appeal or new trial.
 
 
 34
 In order to reach this end result the majority retroactively applied the rulings first enunciated in Nelson. In so doing they judicially condemned the attorneys who represented these defendants for failing to expressly advise their clients that they had the right to appeal and the manner and time in which to appeal. They called it "ineffective assistance of counsel."
 
 
 35
 How they can thus declare a lawyer "professionally incompetent" for not doing what he was not then required to do by law or custom is beyond my comprehension.
 
 
 36
 These were Virginia criminal cases — tried in 1958, 1961, 1963 and 1965 under then existing Virginia law. Appellate procedure was spelled out by Virginia statute — Virginia law — statute and case — did not then or now require either court-appointed or retained lawyers to so advise their clients and, as far as I know, there are no federal statutes requiring attorneys to so do.
 
 
 37
 Instead of disclosing incompetency on the part of these trial attorneys, the record discloses that each of them talked with their clients about the possibility of a new trial and the advisability of an appeal. Weatherman's retained counsel discussed the question of a new trial with him and his mother — in fact they talked about an appeal — Weatherman admits that he did not request an appeal even though he knew that appeals were taken to the Supreme Court of Appeals of Virginia. The retained attorney says he did not feel he had a legal duty to take an appeal because he was not employed for that purpose.
 
 
 38
 Love was represented by court-appointed attorney. He discussed the trial with his client on several occasions. In fact, he told Love that he had no grounds of appeal. Love admits he never told his lawyer he desired to appeal — in fact he had not decided to appeal until after he had arrived at the penitentiary — and he did not then make this desire known to his lawyer or to the court. This court-appointed attorney said Love was satisfied with the verdict and never at any time indicated he wanted to appeal.
 
 
 39
 Shiflett was represented by retained counsel. He was told by his attorney after trial that he could appeal but that it would cost a lot of money. Shiflett now says that he did not learn that he had the right to a free appeal until a year after he was sent to the penitentiary.
 
 
 40
 James was represented by retained attorney. His mother was poor and could not provide money for a court reporter (the State did not then furnish one) — The attorney did not discuss the possibility of an appeal because he knew these people could not afford the costs. James never asked for an appeal — He did not learn until 1965 — and then from another prisoner — that he could have a free appeal.
 
 
 41
 Many of today's expanded appellate rights were unknown when these cases were tried.
 
 
 42
 Until Nelson no court had held that a convicted defendant was entitled to a belated appeal or a new trial solely because his attorney failed to advise him of his right to appeal and the manner and time in which to appeal. See Lovvorn v. Johnston, 118 F.2d 704 (9th Cir. 1941), cert. den. 314 U.S. 607, 62 S.Ct. 92, 86 L.Ed. 488 (1941).
 
 
 43
 Licensed lawyers are presumed to be competent. They should advise their clients in accordance with existing law — not what it might be in the future.
 
 
 44
 Here the majority determines these attorneys' professional competence on the basis of the duties first enunciated in Nelson — not by the standards followed by most, if not all, lawyers prior to that decision.
 
 
 45
 By so doing they conclude these defendants were denied the effective assistance of counsel — a denial of their Sixth Amendment rights.
 
 
 46
 Since the rulings in all of the "right to counsel" cases have been applied retroactively — Nelson must be applied retroactively.
 
 
 47
 My inability to follow such logic is predicated on the fact that all of the cited so-called right-to-counsel cases involved state action and/or inaction — not the failure of the lawyer to properly advise his client. The question of the attorney's competency was neither raised nor determined by any of those courts.
 
 
 48
 Effective assistance [of counsel] should never be determined on whether the legal advice given (or not given) was right or wrong but whether it was within the range of competence demanded of criminal attorneys at the time it was given. See King v. Wainwright, 368 F.2d 57 (5th Cir. 1966), cert. den. 389 U.S. 995, 88 S.Ct. 499, 19 L.Ed.2d 492 (1967), and McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).
 
 
 49
 Whatever these lawyers did or did not do — occurred in 1958, 1961, 1963 and 1965. They should not now be judicially declared incompetent for not then doing what was neither required nor deemed proper prior to June of 1966, the date of the Nelson decision.
 
 
 50
 If I read Nelson correctly, this Court there held: "* * * if the omissions of counsel [in re the right to appeal] have not been supplied by advice imparted by the trial court * * * a defendant's Sixth Amendment right, as made applicable to the states by the Fourteenth Amendment, has been violated."
 
 
 51
 Had the majority here granted the belated appeals in these cases because the Virginia trial judge had failed to give such advice — although I doubt if this Court has authority to require state judges[1] to so do — that would have been a different thing. But that is not what is being done here.
 
 
 52
 If the majority here deems it proper to give every state-convicted defendant in the Fourth Circuit, tried prior to June of 1969, a belated appeal or new trial because the State trial judge did not advise them of the right to appeal and the manner and time in which to appeal, I might go along with them, but I cannot concur in granting belated appeals at the expense of their lawyers' professional reputation.
 
 
 
 Notes:
 
 
 [1]
 The duty of federal judges to so do prior to the 1966 amendment of Rule 32, F.R. Crim.P., was limited to those situations in which sentence was imposed after trial upon a not guilty plea of a defendant not represented by counsel. See Moore, Federal Practice ¶ 32.01 [3]; Wright, Federal Practice and Procedure: Criminal § 528; Orfield, Criminal Procedure Under the Federal Rules, § 32:11