William L. MEADOWS

v.

George J. BETO, Director, Texas Department of Corrections.

Civ. A. No. 6544.

United States District Court,
E. D. Texas,
Beaumont Division.

Sept. 20, 1971.

Will Gray, Houston, Tex., for petitioner.

Crawford Martin, Atty. Gen., Earl S. Hines, Asst. Atty. Gen., Austin, Tex., for respondent.

## MEMORANDUM OPINION AND ORDER

JUSTICE, District Judge.

The petitioner, William L. Meadows, pleaded guilty to a charge of robbery by assault, had his punishment determined by a jury, and is now serving the resulting fifty year sentence imposed on March 25, 1959, by the District Court of Tyler County, 88th Judicial District of Texas. He did not appeal the judgment of conviction and sentence. He now seeks relief from his incarceration in the Texas Department of Corrections by appropriate federal collateral means. 28 U.S.C.A. § 2241 et seq. He alleges several constitutional deficiencies surrounding his commitment, most relating to the inadequacy of his appointed counsel. The standards clearly established by the Supreme Court and the Fifth Circuit concerning the effective assistance of counsel with regard to a defendant's right of appeal make it unnecessary to consider petitioner's other allegations.

On the morning of the trial, in an effort to effect a plea bargain, the District Attorney, Robert Stanley Coe, Esquire, offered petitioner a thirty-five year sentence. Meadows declined the offer. Later in the morning, Rois L. Brockman, Esquire, was appointed to represent petitioner. Meadows then pleaded guilty before a jury which assessed a punishment of fifty years. No appeal was taken. Both Meadows and Brockman testified that neither petitioner's counsel, nor the court, nor anyone else advised Meadows of his right to appeal.

The following testimony was adduced at the hearing on this matter:

"Q [By William E. Gray (petitioner's appointed attorney in this court)] After the jury found you guilty, what, if anything, did the trial court tell you?

A [By petitioner William L. Meadows] Well, he just called me up and told me what happened, and that's about all of it. He said I had two days to prepare for a new trial before sentencing if I wanted it.

Q Did he tell you anything else in connection with that?

A No, sir.

Q Did he tell you whether or not he was going to grant a new trial? Did you have any conversation with him along those lines?

A Well, he told me that he wouldn't grant a new trial if I asked for it. He said it seemed like this

trial here was pretty fair and everything was all right.

Q And that was at the same time he advised of your right to have two days in which to file a motion for new trial?

A Yes, sir, the same time.

Q Did you have any discussion with your court-appointed lawyer [Brockman] about an appeal or filing motion for new trial?

A No, sir.

Q Did you have any conversation with him about anything?

A No, sir.

Q Did you tell the Judge you wanted to think it over for a day or something to that effect?

A Yes, sir, I told him I wanted to think it over a while. I said it was kind of a shock, you know, right here, and I wanted to think it over, and he said, 'Well, I'll wait until tomorrow and call you down when I call Mr. Wilshire to sentence him.'

Q Were you brought back to court on March 25, 1959?

A Yes, sir.

Q Were you sentenced at that time?

A Yes, sir.

Q Did you waive your additional day that time—?

A Yes, sir.

Q —in which to file a motion for new trial?

A Yes, sir.

Q Was your lawyer present, Mr. Brockman, on the sentencing?

A I can't remember.

Q Well, he was there to represent Mr. Wilshire, wasn't he?

A Yes, sir, I'm pretty sure he was.

Q He was also representing you at that time, was he not?

A Yes, sir.

Q When sentence was fixed by the court?

A Yes, sir.

Q Did you have any discussion with your lawyer about your right to appeal?

A No, sir.

Q How about the trial court?

A No, sir.

Q The District Attorney?

A No, sir.

Q Anybody?

A No one.

Q Did you know you had the right to appeal under the Texas Statutes, even though you plead guilty—

A No, sir.

Q —in a criminal case?

A I didn't know that.

Q Did you know in a motion for new trial under the Texas procedure you could have presented evidence on this prejudicial error committed by the District Attorney?

A I didn't even know an error had been made at that time.

Q All right, you didn't know of any of those rights that you had at that time?

A No, sir.

Q And at the time you were sentenced and the time you could have filed a motion for new trial or filed a notice of appeal, were you still indigent?

A Yes, sir.

Q Did you have any money or any way to raise any funds at that time?

A No, sir."

[Record of Proceedings of Evidentiary Hearing of November 13, 1970: p. 32, l. 13, through p. 35, l 20.]

"Q [By Earl S. Hines (Assistant Attorney General)] Now, after the trial and the verdict was returned and the sentence was passed, did you have any discussion with the petitioner about an appeal?

A [By Rois L. Brockman] No, sir, I don't believe we did, no.

Q Did the Petitioner indicate to you that he wanted to appeal?

A No, sir.

\*   \*   \*   \*   \*   \*

Q [By Mr. Gray] Did you advise Mr. Meadows that he could appeal from this conviction, even though he had plead guilty?

A [By Mr. Brockman] I don't think I did.

Q Do you recall whether or not the trial court advised him of that?

A I don't recall.

Q Were you present when he was sentenced?

A I'm sorry that I don't recall. I know he was sentenced the next day, but I don't recall whether I was present or not.

Q And you were present the next day to represent the other principal in this robbery, were you not?

A Yes, sir, the other one was tried first.

Q Do you recall whether or not the District Attorney advised him of his right to appeal?

A I do not recall, no sir."

[Record of Proceedings of Evidentiary Hearing of November 13, 1970: p. 84, l. 1 through l. 16.]

Over the past decade, the inscription etched over the entrance to the United States Supreme Court building—"Equal Justice Under Law"—has been given renewed vitality by a succession of decisions which have elucidated the principle that

"appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." Mempa v. Rhay, 389 U.S. 128, at 134, 88 S.Ct. 254 at 257, 19 L. Ed.2d 336 (1967). See, *e. g.* Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

When "[a]ppellate review has \* \* \* become an integral part of the \* \* \* trial system for finally adjudicating the guilt or innocence of a defendant," Griffin v. Illinois, 351 U.S. 12, at 18, 76 S.Ct. 585, at 590, 100 L.Ed. 891 (1956), it is undoubtedly a stage where substantial rights of a criminal accused may be affected. See, e. g., Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

In an able opinion concerning the right to the effective assistance of counsel subsequent to conviction, Judge Winter has written that

"[w]here the states, which are not under the obligation to provide for appellate review, do provide for appellate review, his [a defendant's] right to counsel continues through that stage of the proceedings and he must be afforded full resort to that review and to the documents and tools of appellate review, the same as if he were not indigent. Where counsel is clearly required at trial and in certain instances even before the formalities leading to trial have begun and where counsel is clearly required on appeal when provisions for an appeal have been enacted, *we think that counsel is also required in the hiatus between the termination of trial and the beginning of an appeal in order that a defendant know that he has the right to appeal, how to initiate an appeal and whether, in the opinion of counsel, an appeal is indicated.* This interim is a critical, crucial one for a defendant because he must make decisions which may make the difference between freedom and incarceration."

\*   \*   \*   \*   \*   \*

"Where counsel \* \* \* treat their representation as terminated without having imparted such advice, a defendant's right to counsel has been effec-

tively denied; or, where counsel have not treated their representation as terminated but fail to impart such advice, a defendant's right to effective assistance of counsel has been effectively denied." Nelson v. Peyton, 415 F.2d 1154, at 1157 and 1158 (4th Cir. 1969) (Emphasis added.) See also Shiflett v. Commonwealth of Virginia, 433 F.2d 124 (4th Cir. 1970).

The unvarying conclusion of the myriad recent cases on this subject in the Fifth Circuit has been concisely summarized by Chief Judge Brown.

"It is clear beyond question that indigents must be furnished counsel at every critical stage of criminal proceedings, including the first appeal. The State may discharge this obligation in various ways * * * But whatever the system—*adequate representation must be provided through appeal.*" Byrd v. Smith, 407 F.2d 363, at 365 (5th Cir. 1969) (Emphasis added.) Cf., e. g., Goforth v. Dutton, 409 F.2d 651, at 654 (5th Cir. 1969).

To achieve this constitutional imperative,

"[w]hen the state chooses to provide representation for an indigent defendant *it must assure that the right to counsel remains inviolate from the beginning of the trial up to and including the appellate review, or in the absence of an appeal, to such time as the defendant intelligently waives an appeal.* To this end, court-appointed counsel must advise the defendant not only that he has a right to appeal, but he must be admonished of any time limitations on the right to appellate review which the state has imposed. Smotherman v. Beto, 276 F.Supp. 579 at 585 (N.D.Tex.1967) (Emphasis added.)

The record in this case is devoid of any evidence that petitioner knew of his right to appeal; hence, he could not have waived it. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

"[I]t is settled that where the [effective] assistance of counsel is a constitutional requisite, the right to be furnished [adequate] counsel does not depend on a request." Carnley v. Cochran, 369 U.S. 506, at 513, 82 S.Ct. 884, at 889, 8 L.Ed.2d 70 (1962). See also Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967). Cf. United States ex rel. Durocher v. LaValle, 330 F.2d 303 (2nd Cir. 1964), cert. den'd, 377 U.S. 998, 54 S.Ct. 1921, 12 L.Ed.2d 1048 (1964).

Nor is there any evidence that the trial judge shouldered counsel's burden and advised defendant of his right of appeal.

"[I]f the omissions of counsel have not been supplied by advice imparted by the trial court as to the right to appeal and the manner and time in which to appeal, a defendant's Sixth Amendment right, as made applicable to the states by the Fourteenth Amendment, has been violated." Nelson, supra, 415 F.2d at 1158. Cf. Lyles v. United States, 346 F.2d 789, at 792 (Footnote 5) (5th Cir. 1965).

Thus, in the instant case, just as in Thomas v. Beto, 423 F.2d 642, at 643 (5th Cir. 1970),

"[i]t is clear that petitioner * * * was denied effective assistance of counsel at a critical stage when his court-appointed attorney failed to advise him of his right to appeal."

The fact that this petitioner pleaded guilty does not vitiate the vigor with which his right of appeal must be protected. See Hill v. Texas, 316 U.S. 400, at 406, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942).

"While ordinarily appeals from a plea of guilty are less frequent than those following a trial on the merits, the incidence of improperly obtained guilty pleas is not so slight as to be capable of being characterized as *de minimis*. See, e. g., United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (D.C. S.D.N.Y.1966). Cf. Machibroda v. United States, 368 U.S. 487, 82 S.Ct.

510, 7 L.Ed.2d 473 (1962)." *Mempa,* supra, 389 U.S. at 136, 88 S.Ct. at 257. Moreover, a valid guilty plea—i. e., one given intelligently and voluntarily—waives only those non-jurisdictional defects which have occurred prior thereto. Meadows had a right to appeal from the judgment of conviction and sentence which was based in part on the jury's assessment of punishment, in order to challenge both the validity of his plea and constitutional inadequacies in the proceedings following his plea. Cf. United States ex rel. Johnson v. Russell, 309 F. Supp. 125, at 127 (E.D.Pa.1970). But, having demonstrated a denial of effective assistance of counsel, which precluded the exercise of this right to appeal, it is not necessary that petitioner make any showing of prejudice thereby. See Hamilton v. Alabama, 368 U.S. 52, at 60, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Cf. also Davis v. Boles, 247 F.Supp. 751, at 753 (N.D.W.Va.1965).

■ In *Byrd,* supra, 407 F.2d at 366, Chief Judge Brown reiterated the principle earlier enunciated in Bland v. Alabama, 356 F.2d 8, at 15 (5th Cir. 1965) cert. den'd 383 U.S. 947, 86 S.Ct. 1203, 16 L.Ed.2d 210 (1966), that the most appropriate relief in a case of this kind is "an out-of-time appeal by whatever procedure is necessary with such appeal —having the full effectiveness of one earlier taken * * *." Cf., e. g., Wainwright v. Simpson, 360 F.2d 307, at 310 (5th Cir. 1966). But he properly emphasized that

"[t]he appeal here must provide as adequate a review of Petitioner's conviction as if he had appealed immediately following sentencing." *Byrd;* supra, 407 F.2d at 366 (Footnote 8).

Otherwise, the State would be subject to the usual alternative of retrying or discharging the petitioner.

Thus, I face the question of whether the circumstances of the instant case are such that this court could fulfill its duty to "dispose of the matter as law and justice require", 28 U.S.C.A. § 2243, by giving the State the option of an out-of-time appeal for Meadows. In *Bland,* supra, 356 F.2d at 16, the court left this option to the State, in the first instance. However, in a very comprehensive opinion in an earlier case concerning the right to appeal, Judge Wisdom concluded that

"[a]t this late date and because of the lack of a transcript of the testimony there is no way to provide the appropriate relief—adequate appellate review * * *." .Pate v. Holman, 341 F.2d 764, at 777 (5th Cir. 1965). Cf. *Bland,* supra, 356 F.2d at 16.

The show cause order entered in this case on February 5, 1970, required the respondent to present to this court "a copy of any statement of facts filed in the trial court". Since no such document was presented, I must assume none is available twelve years after Meadows was tried. There can be no doubt that, if the State had denied Meadows a record of the proceedings sufficient for an appeal, petitioner's conviction and sentence would have to be voided. *Griffin,* supra. If the absence of adequate assistance of counsel at that critical stage described by Judge Winter as "the hiatus between the termination of trial and the beginning of an appeal" effectively denied petitioner his right to appeal in 1959, would an out-of-time appeal twelve years later without the benefit of a transcript of the evidence at the trial pass constitutional muster?

A superficial reference to the holding of Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963) might seem to supply an unexpectedly affirmative answer. However, despite the fear expressed by two dissenters that the scope of *Griffin* was being constricted, a close examination of Justice Douglas's opinion reveals that no such result was intended. The petitioner Norvell was convicted and sentenced in 1941. Though indigent, he had a lawyer. A transcript was sought, but not obtained, because of the defendant's indigency. But, "he did not, moreover, pursue an appeal." *Norvell,* supra, at 421, 83 S.Ct. at 1367.

Thereafter, the official reporter died and efforts to either transcribe the notes of the trial or otherwise reconstruct the proceedings were unsuccessful. Hence, the court faced

"the narrow question—whether a State may avoid the obligation of Griffin v. Illinois, where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time." *Norvell,* supra at 422, 83 S.Ct. at 1368.

And, on the particular facts, the Court's narrow holding was

"that a State, in applying Griffin v. Illinois to situations where no transcript of the trial is available due to the death of the court reporter, may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of the trial, had a lawyer and who presumably had his continuing services for purposes of appeal and yet failed to pursue an appeal." *Norvell,* supra, at 423, 83 S.Ct. at 1368.

However, there is dictum that is especially applicable to the facts of the instant case.

"We do not say that petitioner, having had a lawyer, could be found to have waived his rights on appeal.

\*  \*  \*  \*  \*  \*

"If it appeared that the lawyer who represented petitioner at his trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case." *Norvell,* supra, at 423 and 422, 83 S.Ct. at 1368. See United States ex rel. Maselli v. Reincke, 383 F.2d 129, at 134 (2nd Cir. 1967).

Thus, a careful reading of *Norvell* demonstrates that the answer to the question posed above must be negative. Without "a 'record of sufficient completeness', see Coppedge v. United States, 369 U.S. 438, 446 and 498, 82 S.Ct. 917, 8 L.Ed.2d 21, infra, for adequate consideration of the errors assigned," Draper v.

Washington, 372 U.S. 487, at 497, 83 S. Ct. 774, at 780, 9 L.Ed.2d 899 (1967) (or, in this instance, of the errors that might have been assigned at the time), an out-of-time appeal will not "dispose of the matter as law and justice require." Whether the current lack of a transcript of the evidence is the fault of the State does affect this conclusion; for the Meadows's deprivation of right to appeal immediately after his trial is undeniably attributable to the failure of his appointed counsel to advise him of his opportunity to secure appellate review and brings him under the aegis of the *Norvell* dictum. See Stokes v. Peyton, 437 F.2d 131, at 135–136 (4th Cir. 1970). If Meadows had been informed of his right to appeal and had desired to do so, it would have been the duty of his appointed counsel to have ordered a transcript and the failure to order one would have amounted to ineffective assistance of counsel. Thus, to allow the State to take advantage of the fact that Meadows's assistance of counsel regarding his right to appeal was constitutionally defective would amount to a denial of equal protection, just as much as if he had been denied a sufficiently complete record to enable full appellate review. Cf. United States ex rel. Smith v. McMann, 417 F.2d 648, at 654–655 (2nd Cir. 1969) (en banc).

Hence, the proper course in this instance, as in most cases where an applicant for the writ of habeas corpus is successful,

"is to award the petitioner the maximum relief that he could have obtained if his appeal had been properly perfected and he had been successful in prosecuting it." Coffman v. Bomar, 220 F.Supp. 343, at 349 (M.D.Tenn. 1963), Cf. *Pate,* supra, 341 F.2d at 777.

Accordingly, it is

Ordered that the writ of habeas corpus be, and it is hereby, granted; but it is further

Ordered that execution of the writ be stayed for 30 days to give the State the opportunity to institute proceedings to retry petitioner, if it so desires.