Robert BAXTER, Petitioner,

v.

J. H. ROSE, Warden, Respondent.

Supreme Court of Tennessee.

May 19, 1975.

Hughie Ragan, Jackson, for petitioner.

R. A. Ashley, Jr., Atty. Gen., William J. Haynes, Jr., Asst. Atty. Gen., Nashville, for respondent.

## OPINION

HENRY, Justice.

We granted certiorari in this case to review the action of the Court of Criminal Appeals in affirming the dismissal of petitioner's pro se petition for post-conviction relief without an evidentiary hearing.

Our grant was for the primary purpose of clarifying the law in this jurisdiction with respect to the proper standard of competence to be applied to counsel in criminal representations, and to determine whether privately retained counsel and counsel appointed to represent the indigent are subject to the same standards.

Petitioner was convicted of murder in the first degree and his punishment fixed at confinement in the State Penitentiary for ninety-nine years. This conviction was affirmed by the Court of Criminal Appeals, and certiorari was denied by the Supreme Court on November 19, 1973. On January 11, 1974, petitioner filed his pro se petition for post-conviction relief, predicated upon an alleged denial of his Sixth Amendment right to the effective representation of counsel. It should be noted that on his initial trial, he was represented by privately retained counsel, and that counsel so retained appealed his case to the Court of Criminal Appeals, and filed a petition for the writ of certiorari. It is the conduct of retained counsel that forms the basis of his present complaint. The trial judge dismissed the petition for post-conviction relief without appointing counsel to represent petitioner, and without holding an evidentiary hearing. The Court of Criminal Appeals subsequently appointed counsel, and counsel so appointed, pursued this matter through the Court of Criminal Appeals and now represents petitioner in this Court.

## I.

The Tennessee standard for gauging the competency of counsel was laid down in State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263 (1969) wherein this Court adopted "(t)he standard applied by the overwhelming majority of federal courts", as follows:

Incompetency of counsel such as to be a denial of due process and effective representation by counsel must be such as to make the trial a farce, sham, or mockery of justice. 439 S.W.2d at 264.

In support of the adoption of this standard, the Court cited cases from the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth and District of Columbia Circuits.

Since State ex rel. Richmond was bottomed on the holdings of the "overwhelming majority of federal courts", as of 1969, it is necessary that we trace the developments in the various circuits of the federal appellate system.

## II.

## (A)

### The District of Columbia Circuit

The "farce and mockery rule" had its origin in Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667 (1945), wherein the Court stated:

It must be shown that the proceedings were a farce and a mockery of justice. Id. at 669

The same standard was applied in Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14 (1945).

In Bruce v. United States, 126 U.S.App. D.C. 336, 379 F.2d 113 (1967), the District of Columbia Circuit started on its retreat from the "farce and mockery" rule by stating:

These words are not to be taken literally, but rather as a vivid description of the principle that the accused has a heavy burden in showing requisite unfairness. Id. at 116.

In Scott v. United States, 138 U.S.App. D.C. 339, 427 F.2d 609 (1970), decided within one year after State ex rel. Richmond, supra, the D.C. Circuit declared that the farce and mockery standard was "no longer valid as such but exists in the law only as a metaphor that the defendant has a heavy burden to show requisite unfairness". Further the Court declared:

The appropriate standard for ineffective assistance of counsel . . . is whether gross incompetence blotted out the essence of a substantial defense. Id. at 610.

In 1973, there came before this Circuit, the case of United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973). The Court noted that the Supreme Court of the United States, in Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967), has implied and that this Circuit had explicitly held in Scott, supra, that effective assistance, like the right to counsel itself, derives not only from the due process clause, but from the Sixth Amendment's more stringent requirements. The Court, in DeCoster, adopted the following standard:

A defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate. 487 F.2d at 1202.

We are impressed by Chief Judge Bazelon's language in this most excellent case, and because of its relevance and the conciseness of the expression, we quote from it as follows:

In General—Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases.

Specifically—(1) Counsel should confer with his client without delay and as of-

ten as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client.

(2) Counsel should promptly advise his client of his rights and take all actions necessary to preserve them. . . . Counsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, where appropriate, to make motions for a pre-trial psychiatric examination or for the suppression of evidence.

(3) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research. *Id.* at 1203–04

Thus it will be seen that the farce and mockery rule has been abandoned in the court of its creation.

### (B)

#### *First Circuit*

In Allen v. VanCantfort, 436 F.2d 625 (1st Cir. 1971), the Court held that the appropriate test is whether counsel's actions were so incompetent as to shock the conscience of the reviewing court. This holding was reiterated in United States v. Stamas, 443 F.2d 860 (1st Cir. 1971).

In Moran v. Hogan, 494 F.2d 1220 (1st Cir. 1974), the Court applied the mockery,

sham or farce rule, but, in a footnote, after noting that the Fifth and Sixth Circuits had adopted a different rule, indicated future reevaluation of its position by stating "(t)he instant case is an inappropriate one for reassessment of this circuit's standard . . .".

### (C)

#### *Second Circuit*

The rule in the Second Circuit as set forth in United States v. Yanishefsky, 500 F.2d 1327 (2nd Cir. 1974) is that in order to be of constitutional dimensions, the representation must be so "woefully inadequate 'as to shock the conscience of the Court and make the proceedings a farce and mockery of justice'".

### (D)

#### *Third Circuit*

In this Circuit the test, as announced in Moore v. United States, 432 F.2d 730 (3rd Cir. 1970), is "whether counsel's performance was at the level of normal competency".

This standard was reiterated in 1972, in the case of United States ex rel. Watson v. Lindsey, 461 F.2d 922 (3rd Cir. 1972) and, according to our investigation continues to be the standard in that jurisdiction.

### (E)

#### *Fourth Circuit*

The rule or standard applied in the Fourth Circuit is not entirely clear. In Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959), the Court held that a deprivation of the constitutional right to counsel occurs only "where the representation has been so inadequate as to make a farce of the trial".

In Coles v. Peyton, 389 F.2d 224 (4th Cir. 1968), the Court, while not adopting a specific standard of "reasonable compe-

tence" suggests that standard in the following language:

> The principles may be simply stated: Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. An omission or failure to abide these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby. *Id.* at 226

Without citing *Coles, supra,* the same court in Bennett v. State of Maryland, 425 F.2d 181 (4th Cir. 1970), stated that "(i)t is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that the prisoner was deprived of his constitutional rights".

### (F)

#### *Fifth Circuit*

In Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974), the Court traces the history of the applicable standards; points out that since the decision in MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960), that Court has applied the "reasonably effective assistance" standard many times; that for several years following the decision in Williams v. Beto, 354 F.2d 698 (5th Cir. 1965), the Court used the "farce-mockery" language with some frequency, and in effect wound up by adopting a standard requiring counsel to render reasonably effec-

tive assistance. This is the construction placed upon *Herring* by the same Circuit in Hudson v. State of Alabama, 493 F.2d 171 (5th Cir. 1974), wherein the Court stated:

> Under the standards of this circuit, *Hudson* was entitled to counsel reasonably likely to render and rendering reasonably effective assistance.

### (G)

#### *Sixth Circuit*

The applicable rule in this Circuit is set forth in an excellent and exhaustive opinion by Judge Celebrezze in Beasley v. United States, 491 F.2d 687 (6th Cir. 1974). Prior to that case, the Sixth Circuit had adhered to the "farce and mockery" test. In 1970, the Supreme Court of the United States handed down its decision in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), wherein the Court held that the advice rendered by an attorney as to whether a confession would be admissible in evidence must be "within the range of competence demanded of attorneys in criminal cases".

In view of that decision, the Court, in *Beasley* stated that:

> (T)he "farce and mockery" test should be abandoned as a meaningful standard for testing Sixth Amendment claims. 491 F.2d at 693

Further, the Court said with respect to the farce and mockery standard:

> (W)e reject it, except as it may be considered a conclusory description of the objective standard we adopt". *Id.* at 695

The new standard adopted in the Sixth Circuit is as follows:

> (T)he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense

counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. (Citing cases). Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. (Citing cases) Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. (Citing cases). *Id.* at 696

### (H)

### *Seventh Circuit*

The Seventh Circuit apparently continues to hold to the farce and mockery rule. United States ex rel. Little v. Twomey, 477 F.2d 767 (7th Cir. 1973). See also Thomas v. Pate, 493 F.2d 151 (7th Cir. 1974) and particularly Footnote 4, appearing on page 157 of the opinion.

### (I)

### *Eighth Circuit*

The Eighth Circuit appears to hold to a modified version of the farce and mockery rule. In Cardarella v. United States, 375 F.2d 222 (8th Cir. 1967), the Court said:

(A) charge of inadequate representation can prevail "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court". *Id.* at 230

In Garton v. Swenson, 497 F.2d 1137 (8th Cir. 1974), the Court said:

This Court has not interpreted the "mockery of justice" words, of themselves, to be talismanic. Instead, we have employed them to encompass the principle that a petitioner or appellant bears the heavy burden of proving unfairness. *Id.* at 1139

In its opinion, the Court cites other cases wherein it has more or less modified its farce and mockery ruling. Pointed out is the fact that the Court in the past has indicated tests based on: "circumstances which demonstrate that which amounts to a lawyer's deliberate abdication of his ethical duty to his client"; "counsel who exercises that judgment which might be expected of one trained in the law"; or "We have based our decisions concerning the effectiveness of counsel upon the particulars of each. The standard for effectiveness is not easily reduced to precise words capable of rigid application". *Id.* at 1140.

In McQueen v. Swenson, 498 F.2d 207 (8th Cir. 1974), the Court held:

Stringent as the "mockery of justice" standard may seem, we have never intended it to be used as a shibboleth to avoid a searching evaluation of possible constitutional violations; nor has it been so used in this circuit. It was not intended that the "mockery of justice" standard be taken literally, but rather that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness. (citations omitted)  . . . Despite regular critical attacks on the "mockery of justice" standard by commentators, we have adhered to it. *Id.* at 214

### (J)

### *Ninth Circuit*

The Ninth Circuit follows the "farce and mockery" standard. United States v. Steed, 465 F.2d 1310 (9th Cir. 1972).

### (K)

### *Tenth Circuit*

The Tenth Circuit holds unequivocally to a standard of mockery, sham or farce.

Johnson v. United States, 380 F.2d 810 (10th Cir. 1967).

### III.

■ It is evident from the foregoing survey of the holdings of the various circuits that they are fairly evenly divided. However, the trend appears to be away from the farce and mockery rule, and the better reasoned cases seem to support a more stringent standard. While it necessarily follows that if a criminal trial becomes a farce and mockery because of the conduct of inept counsel, there has been a violation of the Sixth Amendment right to the effective assistance of counsel. However, from that it does not necessarily follow that the representation must be so ineffectual as to make it a farce and a mockery, in order for there to be a violation of the Sixth Amendment right to counsel.

■ We depart from the farce and mockery standard. All cases adhering to this standard are overruled, *pro tanto.* We believe a better standard, expressed in the generalities of *McMann, supra,* is simply whether the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases. We would measure that range of competence by the duties and criteria as set forth in *DeCoster, supra,* and by our own Sixth Circuit case of *Beasley, supra.* We do not consider it to be either necessary or proper, that we establish any precise nomenclature or that we lay down any specific standards or guidelines. We are content to leave the matter resting on a foundation of reasonable competence as tested by the authorities as herein set out. Trial courts and defense counsel should look to and be guided by the American Bar Association's Standards relating to the Administration of Criminal Justice in general, and specifically to those portions of the Standards which relate to the Defense Function.

This opinion to this point, has been concerned with the holdings of various federal courts; and therefore, to decisions applying the Sixth Amendment to the Constitution of the United States. Article 1, section 9 of the Constitution of Tennessee provides, in pertinent part:

(t)hat in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; . . ."

The Sixth Amendment to the Constitution of the United States guarantees that in all criminal prosecutions, the accused shall "have the Assistance of Counsel for his defence".

■ These two constitutional provisions are identical in import with the result that a denial of the Sixth Amendment right to the effective assistance of counsel is simultaneously a denial of the right to be heard by counsel, as provided under the Constitution of Tennessee.

### IV.

We now consider the question of whether privately retained counsel is subject to the same standards of competence as appointed counsel.

In an unbroken line of Tennessee cases, starting with State v. Bomar, 213 Tenn. 699, 378 S.W.2d 772 (1964), and running through Long v. State, 510 S.W.2d 83 (Tenn.Cr.App.1974), our courts have held that the incompetence of privately retained counsel is imputable to the defendant and not to the State. And, therefore, the requisite state action to the successful invocation of defendant's rights under the Fourteenth Amendment to the Constitution of the United States is absent.

In Davis v. Bomar, 344 F.2d 84 (6th Cir. 1965), the Court held in substance, that when counsel is retained by the defendant to represent him in a criminal case, he acts in no sense as an officer of the state; and therefore, there was no constitutional deprivation.

In Woodall v. Neil, 444 F.2d 92 (6th Cir. 1971), the same court held that "[u]nder

some circumstances, . . . failure of retained counsel can be such as to deprive an accused of his constitutional right to counsel". This decision was predicated, in part, on Goodwin v. Cardwell, 432 F.2d 521 (6th Cir. 1970), wherein the Court held that failure of retained counsel to advise a convicted person of his right to appeal constituted a violation of his right to the effective assistance of counsel, warranting federal habeas corpus relief.

It should be stated that there was a strong dissent in *Goodwin,* and in Roddy v. State of Tennessee, 366 F.Supp. 33 (E.D. Tenn.1973), Judge Wilson took strong exception to the soundness of these latter two cases, but considered himself to be bound by them.

The Eighth Circuit makes no distinction between the constitutional standards to be applied as between retained and appointed counsel. Garton v. Swenson, *supra.*

In United States v. Marshall, 488 F.2d 1169, 1193 (9th Cir. 1974), the Court after observing that one of the reasons advanced for not applying the same standard to retained counsel is the fact that the defendant selects his own counsel, and is bound by what he does, the Court said that this theory:

(B)reaks down in the face of the fact that most criminal defendants who can retain counsel are not in any position to judge the competence of the lawyer whom they hire. They have to take him on faith—in reliance on the fact that he has been admitted to practice. Unfortunately, that fact does not guarantee that he is competent to defend criminal case. Most of the recent cases have held that competence of counsel is to be judged by the same standard, whether counsel be appointed or retained.

In the earlier case of Wilson v. Rose, 366 F.2d 611 (9th Cir. 1966) the Court said:

Appellee's right was not diminished, nor his remedy barred, for want of· "State action." Appellee was not charged, convicted and punished by private individuals, but by the State. It was the State which sought to deprive him of his liberty, and he was entitled to the effective assistance of counsel in meeting the State's challenge. *Id.* at 615

Further the Court made this significant comment:

It also makes no difference whether counsel was retained or appointed by the court . . . *Id.*

Then the Court holds:

A contrary rule would have the anomalous effect of diminishing only the rights of those who undertake to bear the cost of their own representation, for it is clear that defendants have a remedy if they leave it to the State to compensate counsel. *Id.* at 616

In Fitzgerald v. Beto, 479 F.2d 420 (5th Cir. 1973), the Court declared the law in this circuit to be:

(T)hat the due process and equal protection clauses of the Fourteenth Amendment assure a state defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed . . . *Id.* at 423

This case is bottomed on the most articulate opinion of the Fifth Circuit speaking through Judge Wisdom, in West v. Louisiana, 478 F.2d 1026 (5 Cir. 1973), wherein the Court held that the constitutional standards applied equally in the case of court appointed as well as privately retained counsel. In arriving at this decision, the Court quoted at length from Professor James R. Craig's article, The Right to Adequate Representation in the Criminal Process: Some Observations, 22 S.W.L.J. 260, 272 (1968) as follows:

Early lower court decisions on effectiveness of counsel often drew distinctions between retained and appointed counsel, with the work of retained counsel being

virtually immune from review. That seems now, at least doctrinally, to be a thing of the past. The distinction was supported, or explained, on two discrete grounds. The latter in time was that the state action required to energize the fourteenth amendment prohibitions was not present where review of the work of retained counsel was sought. That concept was subject to the obvious criticism that what was really being claimed was that the trial at the hands of the state was unfair, although caused by something over which the state ostensibly had no direct control. A useful analogy existed in the mob influence cases, where the existence of the requisite state action was not questioned. (citations omitted) Further, the state action theory was attacked by the argument that the necessary state action could be found in the fact that attorneys were licensed by the state. But the state action concept of old, no matter what its past vitality, has little influence today. (Referencing Shelley v. Kraemer and its progeny). Perhaps the more viable explanation of the distinction was the earlier one that referred to a principal-agent relationship between defendant and defender. That explanation was forcefully attacked as simply unrealistic in fact in most cases. Whatever the rationale, if the distinction had not been discarded before *Gideon, Massiah,* and *Escobedo,* it would seem now to be effectively foreclosed. (Referencing basis of *Gideon* that a man is not competent to represent himself at trial and therefore would seem to be incompetent to evaluate his lawyer's actions). See also Williams, The Twilight of State Action, 41 Tex.L.Rev. 347 (1963).

The language of the Fourth Circuit in Shiflett v. Commonwealth of Virginia, 433 F.2d 124 (4th Cir. 1970) is appropriate:

The notion that state participation, state action or state default is an essential element of a case for relief in this situation confuses a case in which denial of a right of appeal constitutes a denial of equal protection or a violation of due process with one, like the instant case, in which the right denied is the right to effective assistance of counsel guaranteed by the Sixth Amendment. In the latter case no element of state involvement need be proved to warrant relief. *Id.* at 127–28

We are persuaded by these cases, and others cited therein, that the Sixth Amendment right to counsel is not necessarily dependent upon state action. We hold that the standards herein discussed, relating to the effective assistance of counsel, apply with equal force to privately retained counsel and counsel appointed to represent the indigent. Constitutional rights are not the exclusive domain of the poor and the profligate.

It is paradoxical indeed, that Tennessee cases discussing this issue have completely ignored Article 1, section 9 of the Constitution of Tennessee, which guarantees the right to effective counsel in the courts of Tennessee. The question of state action is not involved. We abolish all distinction between the quality and character of services rendered by counsel irrespective of the source of their selection, appointment or compensation. All cases contra are overruled.

## V.

In the case at bar, petitioner has represented to the Court in his pro se petition, that his attorneys were guilty of grievous acts of misconduct. It would serve no useful purpose to detail these charges in this opinion. Suffice it to say, they were sufficient to raise a serious constitutional question—federal and state—as to the effective assistance of counsel.

The trial judge ruled upon this petition without an evidentiary hearing and without appointing counsel to represent the indigent petitioner. While we do not cen-

sure him for doing so in the face of the fact that the two attorneys involved enjoy exemplary professional reputations, and normally practice before the trial judge who most assuredly knows their reputations, the fact remains that it was error to dismiss these charges without an evidentiary hearing and without the appointment of counsel.

We do not regard· the allegations as being merely conclusory as held by the Court of Criminal Appeals. Moreover, it must be borne in mind that they were not prepared by counsel, but by a layman unlearned in the law. The allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers, and the test is whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. John v. Hurt, 489 F.2d 786 (7th Cir. 1973). We cannot say, as a matter of law, that it appears beyond doubt that petitioner can prove no set of facts entitling him to relief.

The ABA Standards, Post Conviction Remedies, Section 4.4A provide:

(I)t is most desirable to avoid processing of applications for post conviction relief beyond the initial screening of the documents without counsel representing the applicant. Counsel should be provided for pro se applicants unable to afford adequate representation.

Section 4.6 provides:

(A) plenary hearing to receive evidence, by testimony or otherwise, is required whenever there are material questions of fact which must be resolved in order to determine the sufficiency of the application for relief.

The Tennessee Post Conviction Procedure Act, as incorporated in Section 40–3801 et seq. T.C.A., obviously contemplates an evidentiary hearing except in those cases wherein a competently drafted petition and all pleadings, files and records of the case, conclusively show that the petitioner is entitled to no relief. A petition alleging sufficient facts to establish petitioner's conviction was void because of an alleged denial of constitutional rights, state or federal, necessitates an evidentiary hearing. Moran v. State, 3 Tenn.Cr.App. 118, 457 S.W.2d 886 (1970).

From this day forward we will apply the standards, guidelines and criteria herein set forth.

The judgment of the Court of Criminal Appeals is reversed and this case is remanded to the Circuit Court at Jackson, with instructions to conduct a full evidentiary hearing on the issues presented by the pleadings.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.