IN THE COURT OF CRIMINAL APPEALS

AT JACKSON

NOVEMBER 1995 SESSION

FILED

January 31, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 02C01-9503-CR-00079 |
| | ) | |
| Appellee | ) | SHELBY COUNTY |
| | ) | |
| V. | ) | HON. WIL V. DORAN |
| | ) | JUDGE BY DESIGNATION |
| HENRY LEE BROOKS, | ) | |
| | ) | (Post-Conviction:  Murder and Assault |
| Appellant | ) | With Intent to Commit Murder) |

FOR THE APPELLANT:

Craig V. Morton, II
212 Adams Avenue
Memphis, Tennessee 38103

FOR THE APPELLEE:

Charles W. Burson
Attorney General and Reporter
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

Christina S. Shevalier
Assistant Atty. Gen. & Reporter
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

John W. Pierotti
District Attorney General

Karen Cook
Assistant District Attorney General
201 Poplar Avenue, 3rd Floor
Memphis, Tennessee 38103

OPINION FILED: _____

AFFIRMED

William M. Barker, Judge

_____ OPINION

Following an evidentiary hearing, the Shelby County Criminal Court dismissed the appellant's petition seeking post-conviction relief. The appellant now appeals from the judgment of the trial court and presents two issues for our review. First, the appellant contends that he was denied his constitutional right to the effective assistance of counsel in that his trial counsel failed to properly investigate the case and prepare for trial. Second, he contends that his guilty pleas were involuntarily and unintelligently entered due to his mother's undue pressure on him to plead guilty and his mistaken belief that his sentences would be served concurrently instead of consecutively.

We affirm the trial court.

The appellant, along with a co-defendant, was indicted during the March 1990 term of the Shelby County Grand Jury for the offenses of felony murder, first-degree premeditated murder, and assault with intent to commit murder.

On October 29, 1990, the petitioner signed two negotiated plea agreements agreeing to plead guilty to first-degree murder and to assault with intent to commit murder. The negotiated pleas, which were accepted by the trial court, provided for the appellant to receive a life sentence as a Range I offender for the murder conviction and a consecutive sentence of twenty-five (25) years as a Range II offender upon his conviction of assault with intent to commit murder.

At the guilty plea submission hearing, the State represented that the following facts would have been proven had the case gone to trial:

> The facts that led to the indictment occurred back on July 28, 1989. A victim of the murder, Rertisia (spelled phonetically) Marshall, along with her husband, Henry Marshall, were at their home here in Shelby County. That address was 784 Josephine. They knew one of these defendants from a prior acquaintance.
>
> They were an elderly couple. I think she was about 70 and he was about the same age. They allowed him to come into their house that afternoon about seven o'clock. There were witnesses across the street and next door who

2

positively identified both of these defendants as going into that house about that time.

One of the neighbors later heard screams coming from the house. In a short period of time these two defendants left the scene in the victims' car. Again, the same people who saw them go in saw them come out of the house and the neighbors went over to the house and found Mrs. Marshall there.

She had been stabbed a number of times. Mr. Marshall had been stabbed a number of times. I think the medical examiner said she was stabbed approximately 19 times. And Mr. Marshall was stabbed about seven times.

At any rate, these two defendants were developed as suspects based upon the information received from the neighbors. They were apprehended and the Defendant Brooks gave a statement of admission admitting that he stabbed both Mr. Marshall and Mrs. Marshall, also implicated the co-defendant, Mr. Evans.

Mr. Evans did give a statement admitting he was present; however, he denied that he actively participated in the stabbing of the two victims. Mr. Evans at the time of this offense was a juvenile. And he has been accepted by the Criminal Courts to be treated as an adult.

In January of 1993, the petitioner filed his post-conviction petition, and the State thereafter filed its response. The trial court appointed counsel for the appellant and conducted an evidentiary hearing on his petition on May 10, 1994. At the conclusion of the evidentiary hearing, the trial court denied the post-conviction petition, although a written order was not entered until September 1, 1994.

Testifying in support of the petition were the appellant, Henry Lee Brooks, and his mother, Cheryl Ann Cook. The petitioner's trial counsel testified for the State at the post-conviction hearing.

The appellant testified that he met with his attorney only three times prior to trial and that she did not properly investigate his case. Although he acknowledged that she inquired of him if he knew of any witnesses, he testified that he advised his trial counsel that he knew of none. He testified that the only evidence that he discussed with his trial counsel was the statement which he had given to the police.

3

The appellant testified that he told his attorney that he never touched the female victim, but that he had seen the co-defendant stab Mrs. Marshall. He acknowledged that he was aware that his attorney did obtain some discovery information from the State.

The appellant further testified that his attorney did not follow through on the pretrial motions which she filed and that there was never a suppression hearing conducted upon his motion to suppress the statement which he had given to the police. Further, he testified that although he did make an incriminating statement to the police, the statement was not voluntarily given and that he did not understand his Miranda rights. He was aware that the hearing date for the pretrial motions and the trial date were the same, and that he would not have pled guilty if he had obtained a favorable result on the motions.

He further testified that his attorney failed to obtain a psychological evaluation of him, even though he admitted that he was taken to a clinic where he was asked questions. He further testified that while his indictments were pending, his mental condition was such that he was shaking a lot, experiencing difficulty concentrating, was having problems in school, and was experiencing blackouts. He testified that his mental faculties were worse when he was deprived of his eyeglasses.

With regard to his sentences, the appellant testified that he was advised by his attorney that he would receive concurrent sentences upon his pleading guilty. He acknowledged, however, that he understood the trial court to state in open court that his sentences would be served consecutively. Despite the provisions in the two negotiated plea agreements which he signed indicating that the sentences would be consecutive, the appellant testified that he thought the "papers" which he signed indicated his sentences would be served concurrently. The appellant testified that he would not have entered pleas of guilty if he had been aware that he was to receive concurrent sentences. He testified that he had lost his eyeglasses during the

4

"incident" and that during his time in jail awaiting trial, he was not provided any glasses and that consequently his attorney read the papers to him because he was unable to read them without his glasses. Further, he testified that he was unaware of the possibility of receiving the death penalty until the trial date. He further testified that the statement which he gave to the police contained inaccuracies. In particular, the appellant testified that the portion of his statement indicating that he stabbed the female victim once or twice was incorrect. At the evidentiary hearing he testified that he only stabbed Mr. Marshall, not Mrs. Marshall.

The appellant further testified that the trial court did not explain his rights to him and that the only reason he pled guilty was that his trial counsel told him that his choice was either to go to trial and get the death penalty or to take the time offered by the State. Accordingly, he testified that he only said yes to everything at the plea submission hearing because his attorney told him to do so.

The petitioner's mother testified that the appellant's trial counsel contacted her two or three times or more. She testified that her son had mental problems in that he was prone to "blackouts," and it was her belief that he was not competent to stand trial, despite the results of the mental evaluation. She did not believe that the jury would acquit her son because he had committed murder. She admitted that she advised her son to plead guilty in order to avoid the death penalty and that she had a difficult time convincing him to agree. She testified that her son's trial counsel advised her that the sentences would be served concurrently.

Appellant's trial counsel, testifying for the State, said that she met on more than one occasion with appellant's family members who were brought to her office by the appellant's mother. She filed many pretrial motions and discussed the case with the petitioner. In addition to receiving discovery from the State, she conducted an independent investigation of the case. She attempted to contact witnesses and arranged for the appellant to have a mental evaluation performed at the Mid-Town

5

Mental Health Clinic. Following the mental evaluation, appellant's trial counsel had a conference with the person who performed the evaluation. She testified that there was no helpful information uncovered during that conference and that the evaluation uncovered no mitigating factors. It was her opinion that there was no question of the petitioner's competency to stand trial and that the evidence against her client was "overwhelming." Further, appellant's trial counsel denied that the appellant ever mentioned having blackouts. She agreed that the appellant knew of no witnesses who could testify on his behalf.

Appellant's trial counsel testified that no hearings were conducted on the appellant's pretrial motions because the petitioner pleaded guilty before the motions were heard. She acknowledged that she advised the petitioner that his sentences would be served consecutively and that she never told him that they would be served concurrently. She acknowledged that she advised both the appellant and his mother that in her opinion the appellant should plead guilty because she felt that the negotiated plea was favorable to the petitioner in light of the evidence against him.

Appellant's trial counsel advised the appellant that in the event he did not plead guilty, she would ask for a continuance so that his pretrial motions could be heard prior to trial. She was also advised by the district attorney that he intended to file a notice of intent to seek the death penalty, and that her main goal was to attempt to settle the cases in order to avoid the risk of such a punishment.

Appellant's trial counsel never received any indication that the appellant did not understand his rights at the guilty pleas admission hearing. Finally, it was the opinion of appellant's trial counsel that even if his statement to the police were suppressed, there was more than enough evidence to convict the appellant of the crimes for which he had been indicted.

Based upon the foregoing, together with the record from the guilty plea submission hearing, the trial court found that the appellant had failed to carry his

6

burden of showing by a preponderance of the evidence that his guilty pleas were involuntarily given or that they were not intelligently entered. Further, the trial court concluded that the evidence failed to establish that the appellant received the ineffective assistance of counsel. We agree.

In a post-conviction relief proceeding, the burden of proof is on the petitioner to show by a preponderance of the evidence the allegations in the petition. State v. Kerley, 820 S.W.2d 753, 755 (Tenn. Crim. App. 1991); Bratton v. State, 477 S.W.2d 754 (Tenn. Crim. App. 1971). On review of post-conviction proceedings, the findings of fact of the trial court are conclusive on appeal unless the evidence preponderates against the judgment. Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

In order for the petitioner to be granted relief on the grounds of ineffective assistance of counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that counsel's deficient performance prejudiced his case. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In the context of a post-conviction relief petition seeking to set aside a plea of guilty based upon ineffective assistance of counsel, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

Applying the above standards to the facts of this case, it is apparent that the appellant was substantially involved in the very gruesome murder of an elderly woman and the unwarranted and horrible stabbing attack on her husband. It is clear that the offenses were of such a magnitude and so terrible that if convicted by a jury, there was undoubtedly a substantial possibility that the appellant would have been sentenced to death by electrocution. In order to avoid that possibility, he voluntarily,

knowingly, and wisely chose to accept a negotiated plea of guilty for a life sentence to be followed by a twenty-five (25) year consecutive sentence. We agree with the trial court that the appellant has simply failed in his burden of establishing that he was denied the effective assistance of counsel or that he entered his pleas of guilty unknowingly or involuntarily.

Accordingly, the judgment of the trial court is affirmed.


_____
WILLIAM M. BARKER


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
DAVID H. WELLES, JUDGE