IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 7, 2000 Session

## WILLIAM PAUL BOGUS V. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. C93-448 & C93-449     J. Steven Stafford, Judge**

---

**No. W2000-00348-CCA-R3-PC - Filed January 31, 2001**

---

The petitioner appeals from the Dyer County Circuit Court's dismissal of his petition for post-conviction relief.  In 1994, the petitioner was tried and convicted of first degree murder in the perpetration of a felony and aggravated burglary.  His convictions were affirmed, after which he timely filed a petition seeking post-conviction relief, claiming ineffective assistance of trial and appellate counsel, juror misconduct because an alternate juror had lied during voir dire about not knowing the petitioner, insufficient evidence to support the felony-murder conviction, and suppression of exculpatory evidence.  After an evidentiary hearing, the post-conviction court denied relief.  We affirm the post-conviction court's denial of the petitioner's request for post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Ralph I. Lawson, Dyersburg, Tennessee for the appellant, William Paul Bogus.

Michael E. Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; C. Phillip Bivens, District Attorney General; James Lanier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, William Paul Bogus, appeals the Dyer County Circuit Court's dismissal of his petition for post-conviction relief.  The petition, as amended by appointed counsel, alleged that the petitioner's convictions for first degree murder in the perpetration of a felony and aggravated burglary are infirm because he received ineffective assistance of trial and appellate counsel, because an alternate juror had lied during voir dire about not knowing the petitioner,

because the evidence is insufficient to support the felony-murder conviction, and because the state failed to disclose exculpatory evidence that a promise of "no prosecution" had been made to one of its witnesses.[1] The post-conviction court held that trial and appellate counsel rendered effective assistance, that juror perjury had not been established, that the evidence was sufficient to support the homicide conviction (as previously determined by this court), and that the state had not suppressed exculpatory evidence; accordingly, the post-conviction court dismissed the petition. In this appeal, the petitioner frames his statement of the issues as follows:

> 1. The petitioner was denied the effective assistance of counsel under prevailing professional standards due to serious conflicts of interest with both court-appointed trial counsel and appellate counsel under facts of record in the Dyer County, Tennessee Circuit Court.

> 2. The petitioner was denied the effective assistance of counsel under prevailing professional standards at the appellate level as the appointed counsel at the trial and appellate counsel failed to counsel with and represent petitioner at all stages of the proceedings before the court which appointed the attorney and also upon any appeal from the judgment of such court which imposes a prison sentence.

> 3. The petitioner was denied the effective assistance of counsel under prevailing professional standards due to a deficient performance of counsel at both trial and appellate level.

> 4. The trial court erred in not allowing the petitioner to represent himself.

> 5. The trial court erred in allowing attorney, Lyman Ingram, to be the designated party for the state and remain in the courtroom over the petitioner's call for the rule.

Because the evidence does not preponderate against the post-conviction court's findings and supports the conclusion that trial and appellate counsel's assistance was effective, we affirm.

The petitioner's convictions resulted from separate criminal charges tried before different Dyer County juries. This court's opinion affirming the convictions reflects that the petitioner was charged and convicted for the 1993 reckless killing of his wife, Debra Johnson Bogus,

---

[1] The petitioner's *pro se* petition for post-conviction relief cited five grounds for relief. No factual elaboration was provided in support of the grounds. The petitioner claimed that his convictions were infirm because they were based on evidence gained pursuant to an unlawful arrest, because they were based on action of a grand or petit jury that was unconsitutionally selected and impaneled, because he received ineffective assistance of counsel, because there was newly discovered evidence, and because of illegal evidence. Other than his claim of ineffective assistance of counsel, we find nothing in the record on appeal to indicate that the other four grounds were pursued in the proceedings below.

during the perpetration of a robbery. The petitioner's wife was found dead in the bedroom of a trailer that she and the petitioner shared. The wife had been strangled, and her tip money from working at Shoney's restaurant was missing. The apparent motive for the robbery was the petitioner's desire to purchase crack cocaine. *See State v. William Paul Bogus*, No. 02C01-9506-CC-00169, slip op. at 2, 4 (Tenn. Crim. App., Jackson, Jan. 22, 1998).

The same morning of his wife's murder, the petitioner forced his way inside the residence of Pauline Cox and James Collins. The petitioner became agitated, assaulted some of the occupants, and departed after E-911 was called. After the petitioner departed, Mr. Collins discovered that his billfold, containing $60, was missing. *See id.*, slip op. at 7, 14-15.

The petitioner received a sentence of life without the possibility of parole for the murder of his wife and a Range II sentence of nine years for the aggravated burglary of the Cox-Collins residence. *See id.*, slip op. at 2. On a consolidated direct appeal, the petitioner challenged the sufficiency of the convicting evidence, complained about the sentences imposed, and raised a mistrial issue in the murder case concerning a juror who saw him being transported to the courthouse in a Department of Correction vehicle. Finding no reversible error, this court affirmed the petitioner's convictions and sentences. The supreme court denied his application for permission to appeal, and thereafter the petitioner timely filed a *pro se* petition for post-conviction relief, which was later amended with the assistance of counsel.

The post-conviction court conducted an evidentiary hearing on January 20, 2000. The petitioner offered the expert testimony of two attorneys with trial and appellate experience in criminal cases. The former district public defender, Steve Davis, who handled the appeals of the petitioner's homicide and aggravated burglary convictions, had waived oral argument before this court. Both of the petitioners' expert attorney witnesses at the post-conviction hearing were of the opinion that waiving appellate argument, particularly in a murder case, constitutes ineffective assistance of counsel. Also, one of the expert attorneys testified that the failure to confer with a client about the trial transcripts and about appellate briefing amounts to constitutionally deficient representation. Neither expert attorney, however, had reviewed the evidence or the records from the petitioner's trials. Therefore, neither attorney could cite to any specific instances of trial error that should have been included in the petitioner's appellate briefs or orally argued before this court.

The complained-of alternate juror was subpoenaed by the petitioner and testified at the post-conviction hearing. The alternate juror unequivocally denied knowing the petitioner, his wife, or their children. The alternate juror lived near the residence that the petitioner and his wife shared, but the alternate juror disclaimed ever telling any of the other jurors that she knew where the petitioner lived.

The only other witnesses at the post-conviction hearing were the petitioner's trial attorney, Lyman Ingram, and the petitioner himself. Although a subpoena apparently had been issued for the petitioner's appellate attorney, Steve Davis, he had not been located. The petitioner elected to proceed without the appellate attorney's testimony.

From Mr. Ingram's testimony, we discern that he was appointed to serve as elbow counsel for the petitioner through sentencing and filing the notices of appeal. For unspecified reasons, Mr. Ingram was fired by the district public defender, Steve Davis. After taking unused vacation time, Mr. Ingram took an appointed job as Dyersburg city prosecutor until 1999 when he was elected to a judicial position. As city prosecutor, Mr. Ingram was not a state employee, and he was not affiliated with the Dyer County District Attorney General's office.

Mr. Ingram was questioned primarily about three areas of his representation of the petitioner. First, he recalled the petitioner telling him during voir dire that a potential juror knew the petitioner. Mr. Ingram testified that he questioned the juror, but she denied knowing the petitioner. Because the petitioner was running short on challenges and because Mr. Ingram had represented a family related to the woman, he accepted her as a juror for the homicide trial.

Second, Mr. Ingram was asked about a stipulation that the trial court read to the jury during the sentencing hearing after the petitioner was convicted of felony-murder. Mr. Ingram and the state had stipulated that the murder was committed while the petitioner was under the influence of extreme mental or emotional disturbance. The petitioner complained that the stipulation was tantamount to an admission of guilt; Mr. Ingram disputed that characterization. He explained that the jury had already found the petitioner guilty when the stipulation was offered. The purpose of the stipulation was to establish a mitigating factor in an effort to reduce the sentence that the jury could impose.

Third, Mr. Ingram testified that he did not pursue the theory that the petitioner could not have robbed his wife because any money taken from her belonged as much to him as to his wife. Mr. Ingram said that this theory is not legally supportable because it incorrectly assumes that community property concepts apply in criminal cases.

When the petitioner testified, he recounted the following complaints. He knew the alternate juror and knew the alternate juror's husband. Trial counsel failed to subpoena her to testify at the hearing on the petitioner's new trial motions. Trial counsel, furthermore, did not adequately consult with him about the charges and the trials. According to the petitioner, he could not reach trial counsel by telephone, and trial counsel never talked to him about the new trial motions. After the trials, when the petitioner tried to contact trial counsel, he was told by a secretary that Mr. Ingram had been fired and that he had become an assistant district attorney.

The petitioner complained that he never knew that trial counsel was going to enter into the stipulation at the sentencing hearing following his felony-murder conviction. The petitioner said that he did not understand what was happening. Trial counsel, according to petitioner, also refused to recall a state's witness to elicit evidence that the witness had been paid to lie.

The petitioner's last complaint about trial counsel was that he knew Mr. Ingram was not "gonna play fair." The petitioner wanted to represent himself, but he was not allowed to do so. The petitioner testified that his distrust stemmed from being prosecuted and convicted many years

earlier by Mr. Ingram for multiple armed robberies. He added, "I just felt that Dyer County wasn't gonna give me a fair shake."

The petitioner reserved his most severe criticisms for his appellate counsel, Steve Davis. The petitioner testified that Mr. Davis never talked to him about the appeals and that he first found out that Mr. Davis was handling his appeals when he received a copy of the appellate brief in the mail. The petitioner said that Mr. Davis neglected to raise certain things in the appeals; in this regard, the petitioner mentioned negative DNA test results from blood collected at the scene of his wife's murder; he also mentioned the issue about the alternate juror and about the trial court's failure to grant a mistrial based on the slow speed at which a tape recording had been played to the jury. Moreover, the petitioner's distrust about the quality of representation he received extended to Mr. Davis. Mr. Davis, the petitioner believed, was not going to give him a "fair shake" because at some earlier time, the petitioner had filed a post-conviction petition alleging that Mr. Davis provided ineffective assistance of counsel to him in a drug prosecution.

Finally, as support for his claim of ineffective assistance of appellate counsel, the petitioner repeatedly argued that this court had found that his cases were improperly filed because the appellate records from the two separate prosecutions had been commingled. The waiver of oral argument, the petitioner also believed, had defeated appellate consideration of his cases.

In announcing its ruling, the post-conviction court demonstrated a thorough understanding of the procedural mechanics and the substantive legal principles that apply in the post-conviction arena. It recognized that the burden is on the petitioner, in a post-conviction proceeding, to prove his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the post-conviction court's findings of fact are given the weight of a jury verdict and are conclusive unless the evidence preponderates against them. *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *see Best v. State*, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985). Should the petitioner fail to establish either factor, he is not entitled to relief.

The scrutiny of counsel's performance must be "highly deferential," and the reviewing court must refrain from concluding "that a particular act or omission of counsel was unreasonable" merely because the strategy employed was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. "A fair assessment," the United States Supreme Court has said, entails making every effort to "eliminate the distorting effects of hindsight" and evaluating the "conduct from counsel's perspective at the time." *Id.*, 104 S. Ct. at 2065. The court promulgated a "strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, 104 S. Ct. at 2065. The court added:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary.
>
> In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-691, 104 S. Ct. at 2066.

With respect to the prejudice prong of ineffective assistance of counsel, a showing that "errors had some conceivable effect on the outcome of the proceeding" is insufficient. *Id.* at 693, 104 S. Ct. at 2067. Rather, the post-conviction petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. In assessing the claim of prejudice, the "court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.*, 104 S. Ct. at 2068. The reviewing court must consider the "totality of the evidence before the judge or jury" and should take into account the relative strength or weakness of the evidence supporting the verdict or conclusion. *Id.* at 695, 104 S. Ct. at 2069.

The post-conviction court made detailed findings on the petitioner's claims. In pertinent part, the post-conviction court found:

> (1) The Tennessee Court of Criminal Appeals previously addressed and determined whether the evidence was sufficient to support petitioner's convictions, and those issues will not be again addressed.
>
> (2) Any commingling of pleadings, papers, and orders between the petitioner's separate cases and the record on appeal had no adverse effect on the previous opinion of this court, which affirmed petitioner's convictions and sentences, and no ineffective assistance of counsel has been shown on this basis.

(3)  No prejudice has been shown to have resulted from the waiver of oral argument by appellate counsel on direct appeal, and this claim will not support a finding of ineffective assistance of counsel.

(4)  The stipulation by trial counsel at the penalty phase of the murder trial regarding the petitioner's drug use and emotional condition was a tactical decision calculated to mitigate the punishment that the jury could impose, and trial counsel's decision is not a basis for post-conviction relief.

(5)  The petitioners' claim, even assuming it is true, that an alternate juror at his murder trial knew the petitioner and his family does not demonstrate ineffective assistance of counsel.  The alternate juror was released prior to the beginning of jury deliberations, and there is absolutely no proof that this alternate juror had any discussions with other jurors about the petitioner or his family members.

(6)  Post-conviction relief is not warranted on the basis of a negative DNA finding in the murder case.  That evidence was presented to the jury, and the jury weighed and considered the information in arriving at its verdict.

(7)  The issue whether it is legally possible for the petitioner to rob property from his spouse should have been raised on direct appeal, and it has been waived.  Even viewing the merits of the claim, the offense of robbery deals with the concept of possession.  The evidence at trial was sufficient for the jury to conclude that the petitioner took money from his spouse, thereby committing robbery.

(8)  The petitioner's complaints about the credibility of witnesses who testified against him the murder case were aired during the trial.  These complaints should have been raised, if at all, on direct appeal, and they are not appropriate for post-conviction relief.

(9) Regarding the petitioner's complaints that appellate counsel failed to communicate with him about the appellate argument and about filing the petitioner's appellate brief, appellate counsel raised basically the same issues contained in the petitioner's motion for new trial.  The issues presented on appeal do not entitle petitioner to post-conviction relief.  Appellate counsel was entitled to and did exercise sound discretion in selecting the issues to be presented on appeal.  While it would have been a better practice for appellate counsel to maintain contact with the petitioner and to consult with petitioner before the

brief was filed, there is no proof that the petitioner suffered any prejudice or that relevant issues were not raised on appeal.

(10)   No basis exists for any claim that trial counsel rendered ineffective assistance of counsel.  There has been no proof that trial counsel's performance fell below the standard for attorneys litigating criminal cases, nor has there been any proof that the petitioner suffered any prejudice as a result of anything trial counsel did or did not do.

(11) The petitioner's complaint that he did not receive a fair appellate review cannot be remedied by the trial court.  The trial court lacks authority to grant the petitioner a new appeal.

We agree wholeheartedly with the post-conviction court's findings.  The evidence in no way preponderates against these findings, and it is unnecessary for us to belabor each and every detail.  We add only four sets of comments.

First, despite the petitioner's conjecture, he suffered no prejudice because the records from his separate trials and prosecutions had been commingled on his earlier appeal.  This court thoroughly reviewed and independently considered the petitioner's convictions and sentences.  We did point out previously that "[a] separate record on appeal should have been prepared for each unconsolidated case being appealed." *William Paul Bogus*, slip op. at 2 n.1.  Nonetheless, we did not dismiss the petitioner's appeals or otherwise penalize him.

Second, the petitioner received an evidentiary hearing on his petition for post-conviction relief, and we have carefully studied the record from that hearing.  Quite simply, the petitioner failed to demonstrate how his trial and appellate counsel rendered constitutionally deficient representation.  For instance, the petitioner presented two expert witnesses who opined that waiving oral argument on appeal in a homicide case fell below the range of competence demanded of attorneys in criminal cases.  To prevail on his claim, however, the petitioner also needed to show that the deficiencies actually had an adverse effect on his appeal; this he did not do, and evidently he never asked his expert witnesses to review the records from his cases so they could evaluate how his appeal might have been compromised.  In addition, at the conclusion of the evidentiary hearing, the petitioner's post-conviction attorney made the statement that Mr. Ingram had done all that he could do as elbow counsel at the trial level.  Moreover, the petitioner did not request that the hearing be continued so he could procure the presence and testimony of Steve Davis, the attorney who handled his appeals.  Under these circumstances, the post-conviction court simply had no basis for finding that the petitioner received ineffective assistance of counsel.

Third, we are troubled by the conflict-of-interest specter that was raised during the post-conviction evidentiary hearing.  An accused's right to the effective assistance of counsel includes the right to an attorney "unfettered by a conflicting interest." *State v. Thompson*, 768 S.W.2d 239, 245 (Tenn. 1989).  The petitioner's trial counsel, Mr. Ingram, testified that he had prosecuted and

convicted the petitioner many years earlier for multiple armed robberies. The petitioner testified that he did not believe that Mr. Ingram was "gonna play fair" because of his prior prosecutorial role. The petitioner further testified that he did not believe that he would receive a "fair shake" from appellate counsel because the petitioner had accused that same counsel of rendering ineffective assistance of counsel in some unspecified drug prosecution.

The law treats a claim of ineffective assistance of counsel differently when it is based on conflict of interests. Prejudice is presumed when "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719 (1980)); *see also Netters v. State*, 957 S.W.2d 844, 847-48 (Tenn. Crim. App. 1997). "Until a defendant has established that defense counsel 'actively represented conflicting interests, the defendant has not established the constitutional predicate for his claim of ineffective assistance.'" *Kirby v. State*, No. 03C01-9303-CR-00074, slip op. at 4 (Tenn. Crim. App., Knoxville, Sept. 28, 1994), *perm. app. denied* (Tenn. 1995).

In the present case, our concerns find no solid ground. As with other claims, we are hamstrung by the lack of evidentiary detail from the post-conviction hearing. We do not know, and the post-conviction court was never advised, about the nature of the petitioner's previous ineffective assistance of counsel complaint against Mr. Davis. None of the records relating to this complaint or to any post-conviction litigation was ever introduced. When the petitioner testified, he did not relate the factual basis for his complaint, nor did he ever divulge whether Mr. Davis was found to have rendered deficient representation in the other prosecution.

As for the petitioner's trial counsel, there has been no showing, for example, that he harbored some animus against the petitioner having previously prosecuted him. Likewise, no evidence was offered suggesting that Mr. Ingram used privileged information that he obtained as a former prosecutor to the detriment of the petitioner. If anything, the evidence at the post-conviction hearing was that Mr. Ingram capitalized on his familiarity with the petitioner's prior armed robberies in an effort to benefit the petitioner. That is, Mr. Ingram testified that he argued to the trial court at sentencing that the petitioner's armed robberies could be considered only one aggravating circumstance because they all occurred during a twenty-four hour period.

Without more in the record before us, we cannot conclude that either of the petitioner's attorneys actively represented conflicting interests or that an actual conflict of interest adversely affected his attorneys' performance. There is, consequently, no presumed prejudice. The record, moreover, fails to show actual prejudice, thereby defeating a *Strickland* claim of ineffective assistance. In summary, ineffective assistance of counsel based upon the assertion of a conflict of interests has not been shown.

Our last comment concerns the gallimaufry of accusations and arguments that the petitioner has advanced in his briefs to the court. We have exerted considerable effort to decipher his

arguments, which are not divided into sections that correspond with his statement of the issues. Some of the arguments, furthermore, are being raised for the first time on appeal.

The petitioner's first appellate issue is that he was denied effective assistance because of conflicts of interests with his counsel. We have already discussed this claim and the lack of evidentiary support for it. More fundamentally, the petitioner did not raise this claim in his original or amended petition for post-conviction relief. The alleged conflicts were briefly alluded to during the post-conviction hearing, but the petitioner did not pursue the alleged conflicts either at the conclusion of the hearing or after the post-conviction court rendered its findings. There are two fleeting references in the argument portions of the petitioner's briefs to alleged conflicts; no authority is cited. This issue, we hold, has been waived, Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b), but even if not waived, the petitioner has failed to carry the necessary burden to secure entitlement to relief.

The petitioner's second appellate issue is that he was denied effective assistance because there was a "gap" in his representation after trial counsel was fired by the district public defender. According to the petitioner, Mr. Ingram was obligated to represent him both at the trial and appellate stages, pursuant to the terms of the court appointment, and Mr. Davis ended up handling the appeals although he was never appointed. The petitioner did not raise or litigate this issue before the post-conviction court, and it is raised for the first time on appeal. Consequently, this issue has been waived. *E.g.*, *Roger Clayton Davis v. State*, No. 03C01-9902-CR-00076, slip op. at 5 (Tenn. Crim. App., Knoxville, Jan. 14, 2000) ( petition based on ineffective assistance of counsel is a single ground for relief; therefore all factual allegations must be presented in one claim). This issue, however, even if properly before us, does not entitle the petitioner to any relief. *See Bobby R. Wilcoxson v. State*, No. 03C01-9804-CR-00134, slip op. at 56-57 (Tenn. Crim. App., Knoxville, Oct. 18, 1999) (counsel's withdrawal from case, during direct appellate proceedings, to accept employment with district attorney general's office did not constitute ineffective assistance of counsel).

The petitioner's third appellate issue is a generic assertion that he was denied effective assistance of trial and appellate counsel. The post-conviction court's findings in this regard, which are fully supported by the record, dispose of this issue. Furthermore, to the extent the petitioner has tried in his briefs to raise other, novel factual claims of ineffective assistance of counsel, those claims are waived. *E.g.*, *Roger Clayton Davis v. State*, slip op. at 5.

In his fourth appellate issue, the petitioner complains that the trial court erred in not allowing him to represent himself. In *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975), the United States Supreme Court ruled that an accused in a criminal prosecution has a constitutional right to represent himself and proceed *pro se* without the assistance of counsel. There are three essential prerequisites, however, that must be present before the right to self-representation becomes absolute: (1) the accused must timely assert the right to self-representation; (2) the accused's request must be clear and unequivocal; and (3) the accused must knowingly and intelligently waive the right to the assistance of counsel. *See Faretta v. California*, *supra*; *State v. Northington*, 667 S.W.2d 57 (Tenn. 1984).

As support for his claim, the petitioner cites to a handwritten docket sheet, introduced as an exhibit at the post-conviction hearing, that contains the entry "Motion to be Allowed to Represent Self." In his briefs, the petitioner then asserts that there "appears to be no transcribed hearing or reasons set forth for this denial in the record." The record before us is totally inadequate to review this claim, which as far as we can tell is being raised for the first time on this appeal.

In his final appellate issue, the petitioner maintains that the post-conviction court erred in allowing Mr. Ingram, the petitioner's former trial counsel, to remain in the courtroom during the hearing although the petitioner had invoked the rule of sequestration. The petitioner cites no authority for his position, and he argues only that he believes "this was improper and prejudicial" to him. This issue has been waived by the petitioner's failure to cite authority for his claim. Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b).

Having exhaustively explored this case, we affirm the judgment of the post-conviction court.

_____

JAMES CURWOOD WITT, JR., JUDGE