**STATE of Tennessee, Appellee,**

v.

**Randy J. OVERBAY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 13, 1990.

Permission to Appeal, Denied by Supreme Court March 18, 1991.

Gale K. Flanary, Bountville, for appellant.

Charles W. Burson Atty. Gen. and Ellen Pollack, Sp. Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen. and Edward E. Wilson, Asst. Dist. Atty. Gen., Blountville, for appellee.

## OPINION

TIPTON, Judge.

The petitioner, Randy J. Overbay, appeals as of right from the judgment of the Criminal Court for Sullivan County denying him post-conviction relief from his November 13, 1987, convictions for aggravated rape and aggravated kidnapping. Essentially, the petitioner claims that his trial counsel was ineffective (1) by not interviewing and presenting witnesses who could show someone other than the petitioner committed the offense and (2) by not seeking DNA (deoxyribonucleic acid) testing. We find no errors as claimed.

The petitioner's convictions related to offenses against a five-year-old female victim and his defense at trial sought to establish an alibi. Upon his conviction, he appealed to this Court which affirmed, noting that the evidence of guilt was overwhelming. *State v. Randy Jennings Overbay*, No. 821, Sullivan Co., 1988 WL 130355 (Tenn. Crim.App., Knoxville, Dec. 7, 1988).

At the post-conviction evidentiary hearing, the substance of the petitioner's complaint about witnesses was that a Mr. Whittington had purportedly stated that Frankie Myers, the victim's step-brother, had admitted committing the rape in question. The petitioner and his mother testified that the names of these two men had been given to the attorney. Neither man testified at the trial.

The attorney testified that he investigated the case, prepared alibi witnesses, and thoroughly discussed the case and available options with the petitioner. He stated that he tried to find Mr. Myers, but was unsuccessful, although he issued a subpoena for Myers at his mother's address. The subpoena was not served. He did not recall being given Mr. Whittington's name, although he said he was given a description of him by the petitioner's mother. The state had Mr. Myers testify at the post-conviction hearing and he denied having sexual intercourse with the victim, saying he believed he was in jail on the date in question. Further, petitioner's present counsel advised the court that, in a telephone conversation on the day before the hearing, Mr. Whittington told counsel that he could not say whether or not anyone had actually confessed to him.

As to DNA testing, the petitioner's mother testified that she saw the television pro-

gram "20/20" on April 1, 1988, which had a feature about DNA testing in two rape cases. She ordered a transcript of the program which was made a part of the record. The feature portrayed DNA testing as a "new tool" and "revolutionary crime-solving technique" by which a person's purportedly unique genetic makeup is extracted from human cells, identified and compared with questioned samples, much as a fingerprint comparison is done. The trial attorney testified that he had not heard of DNA testing until the petitioner's mother had called him about it, some six months after the trial. The record reflects that the attorney, pending appeal, filed a motion with this Court seeking DNA testing, but such motion was denied. Further, the record does not contain any indication of whether or not such testing procedure ever occurred relative to the petitioner.

Upon the completion of the evidentiary hearing, the trial court found that the attorney, in fact, sought to obtain the presence of Mr. Myers as a witness, although to no avail. It noted that Mr. Myers denied committing the offense and that petitioner's counsel asserted that Mr. Whittington could not say that Mr. Myers ever admitted committing the offense. As to the DNA testing, the trial court stated that it was very new and that the court, at the time of the evidentiary hearing, had only one case pending which involved the procedure. The trial court held that it had not been shown that such test was available or practical in this case in 1987. Thus, the trial court found that the trial attorney's representation of the petitioner was within the range of competence required of attorneys in criminal cases.

■ In order to prevail on the claim of ineffective assistance of counsel, the petitioner must have established that the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of the trial would have been different. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On appeal of an unsuccessful post-conviction claim, the burden is on the petitioner to show that the evidence preponderated against the findings of the trial court. *Brooks v. State*, 756 S.W.2d 288 (Tenn. Crim.App.1988).

■ We find ample support in the record for the trial court's conclusion that the petitioner received the effective assistance of counsel relative to the issue involving Whittington and Myers. Likewise, Mr. Myers' testimony and the petitioner's attorney's statement as to Mr. Whittington establish that such witnesses would not have been of assistance to the defense.

■ Further, the trial court was correct in holding that the trial attorney's lack of knowledge of DNA testing had no bearing on his effectiveness as counsel in this case. In *People v. Castro*, 144 Misc.2d 956, 545 N.Y.S.2d 985, 986 (1989) the reliability and forensic application of DNA print identification was considered a "fascinating and novel issue." In 1988, it was noted to be "at the 'cutting edge' of forensic science." *People v. Wesley*, 140 Misc.2d 306, 533 N.Y.S.2d 643 (1988). The first reported appellate opinion dealing substantively with the issue of DNA testing appears to be *Andrews v. State*, 533 So.2d 841 (Fla. Dist.Ct.App.1988) which recognized that the issue was novel. 533 So.2d at 846, n. 4.

An attorney must make adequate legal research as part of his or her duty to investigate in a criminal case. *United States v. DeCoster*, 487 F.2d 1197, 1204 (D.C.Cir.1973). At the time of the petitioner's trial, though, it does not appear that any case was reported which even bore on the forensic application of DNA testing.[1] The standard relating to the right to the

1. In *State v. Apanovitch,* 33 Ohio St.3d 19, 514 N.E.2d 394, 405–406 (1987), decided on Oct. 7, 1987, the dissent cites, in a footnote, two 1986 *Journal of Forensic Sciences* articles about DNA comparison tests. However, we cannot assume that this opinion was available for widespread public consumption by the time of the petitioner's trial nor can we say that reasonably competent attorneys would have discovered it and recognized its potential significance, even if the case had been published.

reasonably competent assistance of an attorney adopted in *Baxter v. Rose, supra,* does not mean that the petitioner was entitled to his attorney reading all cases and scientific journals published across this nation. In *Harvey K. Murray v. State,* No. 928, Hamilton Co., 1986 WL 4508 (Tenn. Crim.App., Knoxville, April 15, 1986) this Court held that if a legal issue, although in existence, was not generally known to the bench and bar when a particular case went to trial, then it could not be said that the attorney in that trial was ineffective for failing to raise the issue. Slip op. at 2. Such reasoning applies here. If a scientific development with forensic application is not generally known to the Tennessee courts and attorneys who are involved with the administration of criminal justice, then a defense attorney's unknowing failure to pursue such development in a given case does not necessarily render him ineffective. Here, the trial attorney provided effective representation and, likewise, there was no showing that a DNA print identification test would change the result of the trial. The judgment is affirmed.

BIRCH and WADE, JJ., concur.