IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 23, 2001

## CHARLES FRANK GRIFFIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 221799    Douglas A. Meyer, Judge**

---

**No. E2000-00584-CCA-R3-PC**
**April 17, 2001**

---

The Hamilton County Criminal Court dismissed Charles Griffin's petition for post-conviction relief. Asserting claims of ineffective assistance of counsel, he appeals. Finding no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Mike A. Little, Chattanooga, Tennessee, for the Appellant, Charles Frank Griffin.

Paul G. Summers, Attorney General & Reporter; Glen C. Watson, Assistant Attorney General; William H. Cox, III, District Attorney General; and Dean C. Ferraro, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The petitioner, Charles Griffin, appeals the Hamilton County Criminal Court's dismissal of his 1998 petition for post-conviction relief. He was convicted in that court in 1995 of two counts of aggravated robbery, after a 1994 mistrial of the charges. He received consecutive 30-year sentences. This court affirmed the convictions. *See State v. Charles Frank Griffin*, No. 03C01-9608-CR-00287 (Tenn. Crim. App., Knoxville, May 7, 1997), *perm. app. denied* (Tenn. 1998). The post-conviction petition claims that various actions and omissions of trial counsel deprived him of the effective assistance of counsel. The post-conviction court appointed counsel for the petitioner and held an evidentiary hearing, after which it dismissed the petition. This appeal followed. On appeal, the petitioner clams only that (1) counsel failed to move the trial court to suppress evidence from a pretrial identification procedure and (2) trial counsel failed to adequately investigate the case. After a review of the record, the briefs, and the applicable law, we affirm the judgment of the post-conviction court.

A. The Petitioner's Trial.

The evidence at the petitioner's trial showed that, on the morning of April 28, 1994, a man entered a Chattanooga labor union office where two female employees, the victims, were working. Both victims observed the petitioner from close range when he asked for and received bus-fare change from the victims. The petitioner then pulled a pistol, took the victims' purses, and left the building. Later, one victim described the robber as being a black man in his forties, six-feet, four-inches tall, and weighing 160 pounds. The other victim described him as being six-feet, two- or three-inches tall, weighing 170 pounds, and having high cheekbones. Both women provided relatively consistent details concerning the robber's clothing.

A few days later, the victims separately viewed police "mugbooks" and photograph lineups containing in total approximately 600 photographs and including a photograph of the petitioner. Both women selected the petitioner's photograph. Both of them identified him as the robber at the preliminary hearing and again at trial.

On the morning of the robbery, a man working at a house across the street from the union office saw a black man drive a gray or silver car slowly through a nearby gravel alley. The worker later identified the vehicle from a building-surveillance videotape which had recorded the exterior of the union office at the time of the robbery. The tape showed the car leaving the crime scene and moving toward the gravel alley where the worker observed it. From the videotape, officers identified the car as a Mercury Sable. They determined that the petitioner owned a tan or light brown Mercury Sable that had hubcaps similar to the Sable in the video.

The petitioner did not testify but produced a witness who had sold a Mercury Sable to the petitioner. That Sable was tan or light brown in color.

The jury convicted the petitioner of two counts of aggravated robbery, and the trial court imposed consecutive 30-year sentences.

B. The Post-conviction Hearing.

At his post-conviction hearing, the petitioner testified that, although his preliminary hearing lawyer challenged – albeit unsuccessfully – the photographic identification procedures, his trial attorney failed to move to suppress the results of the procedure or the victims' identification of the petitioner in court. He alleged that he met with his trial counsel only twice before his first trial in 1994, which ended in a mistrial following a jury impasse, and he met with her twice more before his retrial. He complained that she failed to discuss trial strategy with him.

The petitioner further testified that he told his trial counsel that he was at work at a funeral home when the robbery occurred, that he had a flat tire at the funeral home that morning, and that a minister at the funeral home and Detective Moody with the police department saw him changing his tire. He complained that counsel did not send her investigator to interview the minister

and Moody until several months after the robbery, a delay which impaired the proposed alibi witnesses' ability to recall the flat-tire incident or to articulate it in terms of April 28, 1994, the day of the robbery. Moody did not remember the flat-tire scene, and the minister did not remember if it occurred on the day of the robbery. The petitioner testified that his trial counsel disdained the use of alibi witnesses.

The petitioner further complained that, at trial, police detective Kennedy denied searching the petitioner's sister's house, where the petitioner was arrested, even though, at the preliminary hearing, Kennedy testified that he had searched the house. His lawyer failed to use this inconsistency to impeach Kennedy at trial. The petitioner further testified that Kennedy inaccurately listed the petitioner's weight on the arrest form as 170, when the petitioner weighed 220 pounds at that time.

The petitioner maintained that the videotape did not show his vehicle. He testified that his vehicle was a different color and, at the time, was running on a temporary "donut" tire, just as it was when he was arrested a week after the robbery. The vehicle in the video had no "donut" tire.

Finally, the petitioner complained that his trial counsel failed to exploit the state's misconduct in presenting as evidence a shirt that it maintained the petitioner wore during the robbery, despite the state having presented a different shirt for this purpose during the preliminary hearing.

Trial counsel, an assistant public defender, testified that her office's investigator interviewed Detective Moody, the minister at the funeral home, the petitioner's sister, and other personnel at the funeral home. The investigator was unable to establish through the funeral home that the petitioner worked during the week of April 28, 1994. Counsel admitted that the investigator did not talk to the minister and Moody until shortly before the first trial, when the state's motion to compel disclosure of an alibi defense prompted the interviews. She testified, "[W]e just had never talked to anybody until right on the eve of us having to provide something to the state."

In the petitioner's first trial, counsel relied upon a reasonable doubt strategy which she advanced by rigorously cross-examining the victims. The first trial ended in a mistrial after the jury deadlocked nine to three in favor of conviction. One juror told defense counsel that the police department had inadequately investigated the case and that a witness' description of the car did not match the car in the video. Counsel testified that "that juror kind of just told us some of the things that we'd been arguing ... really swayed them." Counsel opted for the same strategy at retrial. She acknowledged that she considered asking for funds to hire an expert on eyewitness testimony but never "got around to doing it because of [her] case load." Counsel stated that, at the retrial, the victims were better prepared and presented stronger testimony.

Trial counsel acknowledged that she filed no motion to suppress the eyewitness identifications, even though any lawyer should have filed the motion. When asked why she failed

to file the motion, she said, "Simply because I didn't do it" and because "[I had] a hundred clients at the time and I was barely making it from day to day trying to handle my clients. . . . I just never got around to filing it in Charles' case." She stated that she opted to raise the identification question with the jury. She declined to use the alibi witnesses because she believed their uncertainty would damage the petitioner's case.

She testified that she had read the preliminary hearing testimony, and in the first trial, she cross-examined Detective Kennedy about his preliminary-hearing admission that he had searched the petitioner's sister's house; however, at the retrial, she was precluded by the court from cross-examining Kennedy concerning the discrepancy.

Finally, she did not know whether her investigator checked the funeral home's work records or interviewed the construction worker witness. She acknowledged that, after looking at the file, "[T]here was a lot of stuff I hadn't gotten to . . . in a timely fashion. . . . I tend to procrastinate."

Post-conviction counsel announced to the post-conviction court that funeral home employment records for April 1994 could not now be retrieved. After the court made extensive findings of fact on the record, which are summarized in the pertinent sections below, it dismissed the petition.

## C. Applicable Law.

### 1. Post-conviction.

In a post-conviction proceeding, the burden is on the petitioner to establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the post-conviction court's findings of fact are given the weight of a jury verdict and are conclusive unless the evidence preponderates against them. *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The issue of the ineffective assistance of counsel embraces mixed questions of law and fact and, on appeal, is reviewed *de novo*. *Jehiel Fields v. State*, - - - S.W.3d - - -, - - -, No. E1999-00915-SC-R11-PC, slip op. at 5 (Tenn. Feb. 20, 2001); *State v Burns*, 6 S.W.3d 453, 464 (Tenn. 1999).

### 2. Ineffective Assistance of Counsel.

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been

different. *Id.* at 694, 104 S. Ct. at 2068; *see Best v. State*, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985). Should the petitioner fail to establish either factor, he is not entitled to relief.

The scrutiny of counsel's performance must be "highly deferential," and the reviewing court must refrain from concluding "that a particular act or omission of counsel was unreasonable" merely because the strategy employed was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. "A fair assessment," the United States Supreme Court has said, entails making every effort to "eliminate the distorting effects of hindsight" and evaluating the "conduct from counsel's perspective at the time." *Id.*, 104 S. Ct. at 2065. The court promulgated a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, 104 S. Ct. at 2065. The court added:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary.
>
> In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-691, 104 S. Ct. at 2066.

With respect to the prejudice prong of ineffective assistance of counsel, a showing that "errors had some conceivable effect on the outcome of the proceeding" is insufficient. *Id.* at 693, 104 S. Ct. at 2067. Rather, the post-conviction petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. In assessing the claim of prejudice, the "court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.*, 104 S. Ct. at 2068. The reviewing court must consider the "totality of the evidence before the judge or jury" and should take into account the relative strength or weakness of the evidence supporting the verdict or conclusion. *Id.* at 695, 104 S. Ct. at 2069.

D. The Petitioner's Issues.

We will now address the petitioner's specific allegations of ineffective assistance of counsel as he has presented them on appeal.

1. Trial counsel failed to move to suppress evidence obtained from a photographic lineup.

The post-conviction court found that trial counsel's failure to move to suppress the identification evidence was the result of a heavy caseload and not a matter of strategy; however, it found that "even had counsel filed a motion to suppress the identification evidence, it would have been denied because the victims' identifications of the petitioner were reliable." The court stated that it had reviewed the factors applicable to determining a motion to suppress evidence emanating from an identification procedure and had found that a motion to suppress would have been unsuccessful. Thus, the court determined that, even if counsel deficiently performed in not filing a suppression motion, the petitioner failed to demonstrate prejudice.

Our review of the trial court's ruling leads us to the same conclusion. Due process is violated when an identification procedure is so suggestive that it occasions a "very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). On the other hand, even suggestive pretrial identification procedures may result in reliable identifications and, therefore, admissible out-of-court and in-court identifications. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972). In *Neil*, the High Court listed factors which courts should use in determining the reliability of the identification and its admissibility into evidence:

1. The opportunity of the witness to view the criminal at the time
of the crime;
2. The witness' degree of attention at the time of the crime;
3. The accuracy of the witness' prior description;
4. The level of certainty demonstrated at the confrontation; and
5. The length of time between the crime and the confrontation.

*Id*. at 199-200, 93 S. Ct. at 382.

In the present case, the two victims observed the robber at close range and in good light before the stress of a crime-in-progress developed. Then, both victims observed the robber during his display of the weapon and watched him exit the building. One of the victims had "experience" at being a robbery victim and testified that, during this robbery, she concentrated on the appearance of the robber. Within minutes of the robbery, the victims gave to police detailed, substantially consistent descriptions of the robber and his clothing. The victims viewed the police photographs separately, and both selected the petitioner's picture. There is no palpable suggestion in the record before us which indicates that the pre-identification descriptions were inaccurate, except that the petitioner testified at the post-conviction hearing that his weight at the time of the robbery was 220 pounds, not the 160 or 170 pounds stated by the victims. The victims were certain in their

-6-

identifications of the petitioner, and they also identified him at the preliminary hearing and at both trials. The photographic identification procedure occurred within a few days of the robbery.

Based upon the foregoing characteristics of the identification procedure, the petitioner failed to make a clear and convincing showing that a motion to suppress would have had merit. We conclude, upon *de novo* review of the issue, that the petitioner failed to establish the prejudice prong of this claim of ineffective assistance of counsel.

2. Trial counsel's failure to interview prospective witnesses.

The petitioner complains that his counsel failed to investigate his funeral home employment records, failed to interview the construction worker who saw the getaway car, failed to timely interview the prospective alibi witnesses, and failed to develop proof that the petitioner had taken his girlfriend to the dentist on the day of the crime.

The post-conviction court expressed concern about the seven to ten month delay in interviewing the prospective alibi witnesses, but it found that "the investigation that counsel did undertake in this respect contradicted the petitioner's account of events." Moreover, it found a lack of "clear and convincing evidence that any delay in the investigation was prejudicial." Also, the post-conviction court found that the petitioner failed to show that his counsel deficiently performed when she failed to investigate his employment records and that, even if the performance was deficient, there was no showing of prejudice. We note that the petitioner was unable to recover the funeral home employment records for use at the post-conviction hearing. The court did not specifically mention the failure to interview the construction worker or to develop proof concerning the petitioner's trip to his girlfriend's dentist's office; however, no proof was offered at the post-conviction hearing which showed what fruits would have been borne by these additional inquiries.

Trial counsel's stark admission of her procrastination and her failure to pursue certain tasks in preparing the petitioner's case for trial belies any notion that she sufficiently performed in the preparation stage. Were we pressed to the point, on *de novo* review we might well disagree with the trial court that the petitioner failed to establish deficient performance in counsel's failure to locate and analyze the funeral home's employment records. We need not address the deficiency of her performance, however, because the petitioner simply failed to demonstrate "a reasonable probability that, but for counsel's [alleged shortcomings in trial preparation], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In other words, he failed to prove by clear and convincing evidence that he was prejudiced. In none of the alleged instances of failure to investigate did he establish what facts would have been revealed by further investigation.

Of all of these issues, we have the most concern about the possible spoliation effect of the delay in memorializing the prospective alibi witnesses' information. In the case of the minister at the funeral home, the delay may have foreclosed any determination that the flat-tire incident occurred on the morning of the robbery. Assuming that it was this flat-tire incident which resulted in a "donut" tire later appearing on the petitioner's car, a timely memorialization of the minister's

knowledge of when the event occurred may have been especially critical to the defense. This issue is ultimately controlled, however, by the post-conviction law, which requires the petitioner to prove his claims by clear and convincing evidence. We cannot speculate that the minister or any other witness would have offered credible, exculpatory evidence had he been interviewed more promptly.

### E. Conclusion.

Based upon this analysis, we conclude that the trial court's judgment is supported in the record, and we affirm the dismissal of the post-conviction petition.

_____
JAMES CURWOOD WITT, JR., JUDGE