IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2003

**BILLY B. BROWN V. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-19936      Bernie Weinman, Judge**

**No. W2002-00986-CCA-R3-PC  - Filed November 14, 2003**

The petitioner appeals the denial of post-conviction relief. He argues the post-conviction court erred in determining he received the effective assistance of counsel at his trial. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Gray W. Bartlett, Memphis, Tennessee, for the appellant, Billy B. Brown.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Scot A. Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County jury convicted the petitioner of one count of premeditated first degree murder and two counts of attempted first degree murder. The trial court imposed a life sentence with the possibility of parole and two twenty-year sentences, all to be served concurrently. The petitioner's convictions were affirmed on appeal. *See* State v. Billy B. Brown, No. 02CO1-9805-CR-00157, 1999 Tenn. Crim. App. LEXIS 521 (Tenn. Crim. App. May 26, 1999, at Jackson), *perm. to app. denied* (Tenn. 1999). The petitioner sought post-conviction relief on the grounds his trial counsel was ineffective. The post-conviction court denied relief; this appeal followed.

**BACKGROUND**

The facts presented at the petitioner's trial are set forth in this court's opinion affirming his convictions:

The state's proof revealed that the defendant was married to Nicole Burrow; however, they were estranged. Burrow was dating Jerry Jerome Parker (hereinafter "Parker") which angered the defendant. . . .

On the early morning of March 26, 1996, Burrow called defendant's employer to make certain that the defendant was at work. Upon ascertaining that he was, Burrow, Parker, Thomas Parker (Parker's sixty-three-year-old father), and Thomas Parker's friend went to defendant's apartment to secure Burrow's belongings. Unknown to Burrow, defendant left his employment shortly after Burrow's phone call. Upon arriving in the parking lot, they observed the defendant firing at them with a pistol from the second floor balcony. A neighbor heard the defendant state, "Nicole, my wife, I've got you dead to right."

Parker exited the vehicle and fled across the street while the defendant fired at him. Burrow attempted to flee the parking lot in the car. Defendant continued to fire, and one of the bullets entered the rear window and struck the elder Thomas Parker in the head. Thomas Parker died as a result of the gunshot wound.

Other state witnesses observed the defendant firing from the second floor balcony. No witness testified that they observed anybody in the Burrow vehicle with any kind of weapon.

*Id.* at \*\*2-3.

## PROOF AT POST-CONVICTION HEARING

At the post-conviction hearing, the petitioner initially testified trial counsel met with him only twice prior to trial. He later stated they met four times. He said each meeting was limited to approximately ten minutes. The petitioner further complained trial counsel was not well-prepared for trial. According to the petitioner, he asked trial counsel to interview Cathy Williams, who lived in the apartment complex and witnessed the shooting, but counsel failed to do so. The petitioner also said trial counsel never advised him of a plea offer from the state.

Trial counsel testified at the hearing that she met with the petitioner "[q]uite a few times" while she represented him. She explained she met frequently with the petitioner because "he was one of the clients that you . . . have to hold his hand." She stated the petitioner's testimony regarding the number and length of their meetings was inaccurate. She said she and the petitioner discussed his case extensively, she reviewed the facts with him, she gave him discovery information, and she discussed the possible penalties with him.

According to trial counsel, she advised the petitioner of the state's offer to allow him to plead guilty to second degree murder in exchange for a twenty-five or thirty-year sentence. She stated the petitioner rejected the offer because he insisted he was not guilty and believed the jury would acquit him.

Trial counsel testified she attempted to locate Cathy Williams, but Williams had moved from the apartment complex. Trial counsel stated she interviewed the other two witnesses named by the petitioner, and those witnesses testified at trial. She said she also went to the apartment complex and interviewed residents in an effort to locate other witnesses to the shooting, but was unable to find any other witnesses to support the petitioner's theory of self-defense.

No other witnesses testified at the post-conviction hearing.

## POST-CONVICTION COURT'S FINDINGS AND CONCLUSIONS

In its order denying post-conviction relief, the post-conviction court found trial counsel thoroughly prepared the petitioner's case for trial; met with the petitioner on numerous occasions; properly investigated the case; tried, but failed to locate Cathy Williams; and negotiated a plea offer, which the petitioner rejected. Accordingly, the post-conviction court concluded the advice given and services rendered by trial counsel were within the range of competence demanded from an attorney in a criminal case.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner argues the post-conviction court erred in concluding he received the effective assistance of counsel because trial counsel: (1) met with him only twice prior to trial; (2) failed to interview and secure the testimony of Cathy Williams; and (3) failed to communicate the state's plea offer to the petitioner. His arguments are without merit.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. *See* Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

The petitioner bears the burden of proving the factual allegations that would entitle petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461.

The proof in the record before us does not preponderate against the findings of the post-conviction court. The post-conviction court accredited the testimony of trial counsel, who indicated that she met frequently with the petitioner prior to trial and properly prepared for trial. Further, the

-3-

post-conviction court found trial counsel tried to locate Cathy Williams, but her efforts were unsuccessful. We also note the petitioner has failed to establish prejudice with regard to this potential witness since she did not testify at the post-conviction hearing. *See* Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Trial counsel interviewed other witnesses who testified at trial and tried to find witnesses to support the petitioner's theory of self-defense. Trial counsel negotiated a plea offer with the state and conveyed the offer to the petitioner; however, he rejected it. Based upon these findings and the record, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE