IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2005 at Knoxville

## JOHNNY DEE ROBERTS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2001-C-1812    Cheryl Blackburn, Judge**

------

**No. M2005-00215-CCA-R3-PC - Filed January 10, 2006**

------

The petitioner, Johnny Dee Roberts, appeals from the Davidson County Criminal Court's dismissal of his petition for post-conviction relief, in which the petitioner had attacked his 2002 convictions of aggravated rape and aggravated sexual battery. The post-conviction court determined that (1) the petitioner failed to establish either the deficient performance of trial counsel or that he was prejudiced by the actions of counsel and that (2) the issue of prosecutorial misconduct had been previously determined on direct appeal. Because the record supports the post-conviction court's ruling, we affirm the denial of relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the Appellant, Johnny Dee Roberts.

Paul G. Summers, Attorney General & Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This court's opinion adjudicating the petitioner's direct appeal sets forth the facts of the conviction offenses. *See State v. Johnny D. Roberts*, No. M2002-02996-CCA-R3-CD (Tenn. Crim. App., Nashville, July 30, 2003). To summarize, the female victim went into the garage of her condominium about 1:00 a.m. on July 28, 2001, and when she raised the garage door, the petitioner entered, pulled down her shorts, and inserted his finger into her vagina. *Id.*, slip op. at 1-2. As they fell to the floor and struggled, the victim bit the petitioner's cheek and ear and scratched him. *Id.*, slip op. at 2. The petitioner ran away but left behind his hat and a necklace. *Id.* A medical examination of the victim revealed vaginal irritation, and when arrested, the petitioner had scratches on his face and elbow and a cut on his ear. *Id.*, slip op. at 2-3. A DNA analysis linked the blood

found on the victim's clothing to the petitioner.  *Id.*, slip op. at 3.  The jury convicted the petitioner of aggravated rape and aggravated sexual battery.

In the post-conviction evidentiary hearing, the petitioner testified that he met with his court-appointed trial counsel "at least six to eight times" prior to trial.  He agreed that counsel had opined that the petitioner's version of the facts of the case was not believable.

He testified that counsel "kept like trying to persuade [him] not to testify" and told him that "they would max [him] out or give [him] the max" if he testified.  He recounted that counsel said, "[I]f you want me to sit and – to keep you from getting 25 years, she said, yeah, I will beg you not to testify."  He acknowledged that he "finally gave in" because of the "excitement and stress at the time."  On the day of trial, he signed a written waiver of his right to testify.  He acknowledged that counsel read the written waiver form to him and that he understood that the decision whether to testify was his.

The petitioner testified in the evidentiary hearing that, at trial, he would have testified that he met the victim at a local pub, that she told him where she lived, that she was new to the area, and that she had some pills to sell.  The petitioner said he would have testified at trial that, after the victim left the pub, he walked to her condominium to tell her he might be able to find a buyer for her pills.  She was in the driveway at her car, and the petitioner said that his approach startled her, resulting in the victim's assault of the petitioner.

The petitioner's trial counsel testified in the evidentiary hearing that she had been practicing criminal law for approximately 14 years.  She testified that she held 20 "face-to-face" meetings with the petitioner prior to trial. She testified that the petitioner rejected her recommendation to accept a plea offer of 12 years' incarceration.  Additionally, she testified, "[I]t was always my belief that Mr. Roberts would not help his case by testifying."  She acknowledged that she often expressed this opinion to the petitioner.  She testified that the petitioner's account of the encounter with the victim "sounded false" and was inconsistent with the accounts of witnesses who observed the petitioner on the night of the offense.  The petitioner had made a "terrible witness" during a pretrial suppression hearing, and counsel expected devastating impeachment evidence if the petitioner testified at trial.  Counsel testified that the decision whether the petitioner would testify was not made until after the state closed its case-in-chief.  She affirmed that she informed the petitioner that, regardless of her recommendation, he could testify if he elected to do so.

In its written order, the post-conviction court determined that the petitioner had failed to establish that trial counsel had performed deficiently with respect to the petitioner's waiver of his right to testify and that in any event, no prejudice was shown.  The court further held that the issue of the prosecutor's claimed closing-argument reference to the petitioner's election to not testify had been previously determined by the court of criminal appeals.  We agree that the petitioner established no claim to post-conviction relief.

When a petitioner challenges the effective assistance of counsel, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel's services fall below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). Courts need not address both *Strickland* components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

In evaluating counsel's performance, this court should not examine every allegedly deficient act or omission in isolation, but rather we view the performance in the context of the case as a whole. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The primary concern of the court should be the fundamental fairness of the proceeding being challenged. *Id.* Therefore, this court should not second-guess tactical and strategic decisions of defense counsel. *Henley*, 960 S.W.2d at 579. Instead, this court must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time. *Id.*; *see also Irick v. State*, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998). A court must

> "consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect . . . ."

*Henley*, 960 S.W.2d at 580 (quoting *Strickland*, 466 U.S. at 696-97, 104 S. Ct. at 2069).

The post-conviction procedure may not be used to re-litigate issues that have been "previously determined." *See* Tenn. Code Ann. § 40-30-106(f) (2003). A ground for relief is previously determined when "a court of competent jurisdiction has ruled on the merits after a full and fair hearing." *Id.* § 40-30-106(h) (2003). "A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." *Id.*; *see Miller v. State*, 54 S.W.3d 743, 747-48 (Tenn. 2001) (holding that issue raised and resolved in the petitioner's direct appeal "cannot be revisited in this post-conviction proceeding").

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). On appeal, the appellate court accords to the trial court's findings of fact the weight of a jury verdict, and these findings are

conclusive on appeal unless the evidence preponderates against them. *Henley*, 960 S.W.2d at 578-79; *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

We agree with the post-conviction court that the petitioner failed to establish by clear and convincing evidence that the petitioner's trial counsel deficiently represented the petitioner in facilitating his waiver of his right to testify. The post-conviction court accredited counsel's testimony that she had strategic concerns about the petitioner's testifying[1], that she expressed her reservations to the petitioner, and that he voluntarily chose to waive in writing his right to testify. The petitioner acknowledged that counsel read the waiver to him and that he understood that the decision was his alone. The record, therefore, supports the post-conviction court's ruling that the petitioner failed to show deficient performance of trial counsel on the issue of waiving the right to testify.

The claim of prosecutorial misconduct during closing argument was described by this court in *Johnny D. Roberts*:

> In his closing argument, the prosecutor stated, "Now, let's talk about what [the victim] did say, because she's the only one that gave a version of what happened. She's the person who told you what happened." The defendant objected, arguing that the prosecutor had commented on the defendant's right not to testify, and the trial court responded with the following curative instruction:
>
> > All right. Ladies and gentlemen, you are to disregard the last remarks of counsel. Again, counsel's statements are not evidence and are intended just to assist you. The defendant is not required to testify and you can make no inference from that fact.

*Johnny D. Roberts*, slip op. at 6.

The petitioner's amended petition for post-conviction relief casts this issue as one of prosecutorial misconduct resulting in a violation of the petitioner's right to refrain from self-incrimination. The post-conviction court apparently understood the issue as such and held that the issue had been previously determined on direct appeal. Indeed, as a primary issue, the claim was determined by this court in *Johnny D. Roberts*. The *Johnny D. Roberts* court said, following its analysis of the issue, "We conclude that the [prosecutor's] comment did not affect the verdict and

---

[1] This court's opinion in *Johnny D. Roberts* states, relative to a sentencing issue, that "the defendant has prior convictions for attempted rape, indecent exposure, assault, burglary, and many other offenses." *Johnny D. Roberts*, slip op. at 8.

does not require reversal." *Id.*, slip op. at 7. We hold that the primary legal issues surrounding the prosecutor's comments were previously determined and may not be re-litigated in a post-conviction proceeding.

In the petitioner's brief, however, he casts the issue as one of ineffective assistance of counsel, based upon his claim that counsel failed to object to the prosecutor's commentary, including the prosecutor's reference to "letting the cat out of the house" as a comment upon the petitioner's failure to testify. We note that trial counsel testified that she objected to the "letting the cat out of the house" remark and raised it on appeal. The post-conviction court did not comment on the testimony because it treated the issue as one of primary error that had been previously determined.

As mentioned, the pleadings do not cast the issue as one of ineffective assistance of counsel, and the post-conviction court did not adjudicate the effectiveness of counsel relative to the state's closing argument. This court generally will not find error premised upon a theory raised for the first time on appeal. *See* Tenn. R. App. P. 36(a).

In any event, on direct appeal, this court held that "the trial court's curative instruction was sufficient to correct any possible prejudice that resulted from the statement. The jury's compliance with the instruction by the trial court is presumed." *Johnny D. Roberts*, slip op. at 7. The *Johnny D. Roberts* court's adjudication that the petitioner experienced no prejudice as a result of the prosecutor's remarks compels this court in this post-conviction action to hold that no *Strickland* prejudice resulted from counsel's actions. This determination forecloses post-conviction relief.

For the reasons articulated, we affirm the denial of post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE